Opinion issued May 27, 2021



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-19-00336-CV

———————————

**DEZZIE BRUMFIELD, JOE ADAMO, JULIA ADAMS, NANCY ALLEN, ANDREW ANDERSON, BEVERLY ANDERSON, ONYEMA ANOZIE, WHITLEY ARRINGTON, SHARON BACON, KOLAWOLE BAKARE, LONNIE C. BALL, ELIJAH BANKS, MARK BASS, KEITH BATEASTE, CHRIS BERMOND, SR., MICHELLE BOLOTTE, BENJAMIN BOOTH, SONYA BOURNE, ROSIE BOYD, TRAVIS BROUSSARD, ANDRE BROWN, ANDREW BROWN, ANNIE BROWN, CALVIN BROWN, MACARTHUR BROWN, RAQUEL BROWN, RICKEY BROWN, SAUL BROWN, TERRENCE BROWN, EDWARD BRUMFIELD, ALVIN BURDEN, CLIFTON BURNS, RONALD BUSH, ORALEE CABARRIS, RONNIE CAGE, DELORIS CANNON, ERNESTINE CANNON, DEBORAH CARTEE, PAMELA CAUSEY, LEROY CAYETTE, MICHAEL CAYETTE, TIM CHAMBLISS, BETTY CHAPMAN, GWENDOLYN CHAPMAN, HAZEL CHASEZ, LARRY CHESSER, CEDRIC CHILDRESS, ALETHEA CLARK, KATHY CLAY, GLORIA CLEMONS, ROBERT CLOONAN, LARRY COBB, RODERICK COBB, ANTHONY COLA, MARK COLEMAN, ALICE CONERLY HARMON, GEORGE CRENSHAW, WILLIAM CULLEN, NIZAR DAHAB, MARY DAILEY, KING DASE, CLEOPTHA DAVIS, GEORGE R. DAVIS, JUANITA DAVIS, RICKY DAVIS, JOSEPH DAZZIO, CALVIN DEE, FRANCISCO DEJEAN, SARAH DILLON, MATTHEW DIXON, THOM DO, JANICE DOZIER,**

TIMMERCER DUKES, TONY EDMOND, VANESSA EDMOND, LAVERN ENGLAND ON BEHALF OF THE ESTATE OF MAJOR ENGLAND, ELAINE ERKARD, JOHN EVANS, SYDNEY EVANS, LEE FELTON, REGINALD FINKLEA, LOUIS FISHER, WOODLEY FISHER, VERNELL FLEMING, PAUL FLOWERS, TIMOTHY FLYNN, FREDERICK FOUNTAIN, MARTHA FOUNTAIN, JAMES FRANKLIN, OTIS FRYER, FREDERICK GAINES, DANIEL GARNER, SR., KIMBERLY GHOLAR, EMMA GIRON, ARTHUR GLOVER, NATASHA GLOVER, FERMIN GOMEZ, FLORA GOODLOE, EDDIE GRAY, JR., NORMA GREEN, MARILYN GREGORY, BRAD HAAS, DEBORAH HAAS, CLAUDE HAMILTON, ANGEL HARRIS, FREDERICK HENRY, DEAN HICKS, JOHN HICKS, JR., KATHY HILL, JERRY HINTON, GARY HOWARD, WILLIAM HUGGER, HARRY JACKSON, MAYLENE JACKSON, GENETTER JANUARY, SOYAN JEMISON, CLIFFORD JOHNSON, ROBERT JOHNSON, JR., JEFF JOLET, ELDORA JONES, JERRY JONES, MARY JONES, TOMMY JONES, CALVIN KEYS, CHARLES N. KING, ERIC KING, KELLY KING, LEE KING, PERCY KNIGHT, ROBERT KNOX, TAMI KRUK, CHARLEAN LACY, WESTON LADNER, FREDERICK LANE, JOHN LAVERGNE, ELIZABETH ANN LEE, FELIX LEE, JERRY LEE, PALMETTA LEE, JAMES LENOIR, ANTONIO LEONARD, ODELL LEVERETTE, ANITA LINDSEY BUSH, DEVIN LLOYD, WILLIAM LOGAN, JIMMY LOWE, FLESHIA MAGEE, ARTHUR MALVEAUX, BAMBI MARCHETTI, VANESSA MARKS, ALAN MARSAW, JERRY MARSHALL, CLAUDIO A. MATEO, ETHEL MAY-HARWELL, KATRINA MCBRIDE, SANDRA MCGOWAN GIPSON, YANCY MCGUFFERY, NATASHA MCINTYRE, JANICE MCKINNIS, SHAMECKA MCNEAL, MICHAEL MELTZ, ALLEN MERRITT, LIZA MGEE, JEANETTE MITCHELL, MAURICE MORGAN, SHERRY MORGAN, EDDIE MORRIS, GREGORY MORRIS, ALMA MYERS, ANNIE NELSON, MAGGIE NEWSOME, NGA NGUYEN, RAYMOND NGUYEN, ADAM NICHOLS, EDWARD NORFOLK, MARY NORTON, JACK O'NEAL, JOHN E. OWENS, JOHN OWENS, JR., JENNIFER PARHAM, DENNIS PARKER, CLAIRE PATTERSON, DAVID PAYNE, KENNETH PEARSON, BRAD PERRY, ROBERT PERRY, TYRONE PERRY, RAY PERRYMAN, JOHN PIMENTEL, EMMILS POLLARD, SR., BEN PORTER, RODRIC POWE, SHELTON POWE, SHIRLEY PREE, WILLIE PREE, GWENDOLYN PURVIS, LAURIE QUIN, EVANGELINE RAMIREY, JOHN RANDAZZO, III, JOHN RANDAZZO, JR., ISAAC RANKIN, LENA RATCLIFF, JOHN W. RICHARD, ALLEN RICOUARD, WILBER RIGGS, MARK RIPIN,

**ALLIE ROBINSON, ANGELA ROBINSON, ARTHUR ROBINSON, SR., JOHNNY ROBINSON, STACY ROBINSON, VIRGINIA ROBINSON, CLEVAND ROGERS, JONATHAN ROGERS, THADDEUS SANDERS, JR., LORY SANDOLPH, ANDRIA SAWYERS, ELDRIDGE SCOTT, RONNIE SHACK, JAMES SHAW, JR., SALEH SHEHADEH, TOMMIE SHINALL, TERRY SIMPSON, DEBORAH SINCLAIR, LESLIE SLADE, LAWANDA SMILEY, BELINDA SMITH, JIMMY SMITH, RODNEY SMITH, WILLIAM SMITH, YVETTE SMITH, BRENDA SMOTHERS, SHEILA SULLIVAN, BETTIE TAYLOR, DARREN TAYLOR, SHARON TAYLOR, JIMMIE TEACHER, MADISON TERRY, ARTHUR THOMPSON, JR., ALTON TILLIS, CHARLES TIMS, TERRI TORRIES, FRANK TRIPLETT, DAVID TUBBS, PARRISH TURNAGE, DAVID TURNER, JR., GLORIA VALLEY, ALVIN WALKER, JAMES WALKER, RUTHIE WALKER, DELMONICA WASHINGTON, RONNIE WASHINGTON, ARTHUR WEATHERSPOON, ROY WEATHERSPOON, DARRYL WHITE, GRAYSON WHITE, SHEQUITTA WHITE, DARREN WIGGINS, CEDRIC WILEY, LESSIE WILKERSON, DOROTHY WILLIAMS, GLORIA WILLIAMS, JEREMY WILLIAMS, TELFORD WILLIAMS, MARSHA WILLIAMSON, ORLANDO WILLINGHAM, OTIS WINSTON, THERRIN WOODS, VANCE WOODS, WARREN WRIGHT, CAROL YATES, AND CYRUS YOUNG, Appellants**

**V.**

**ROBERT WILLIAMSON, AS INDEPENDENT EXECUTOR OF THE ESTATE OF JIMMY GLENN WILLIAMSON, DECEASED, THE ESTATE OF JIMMY GLENN WILLIAMSON, DECEASED, JIMMY WILLIAMSON, P.C., WILLIAMSON & RUSNAK, CYNDI RUSNAK, CYNDI RUSNAK, PLLC, MICHAEL A. POHL, LAW OFFICE OF MICHAEL A. POHL, PLLC, Appellees**

---

**On Appeal from the 189th District Court
Harris County, Texas
Trial Court Case No. 2017-38294**

---

**O P I N I O N**

Appellants[1]—272 individuals—challenge the trial court's rendition of summary judgment in favor of appellees, Robert Williamson, as independent executor of the Estate of Jimmy Glenn Williamson, deceased, the Estate of Jimmy Glenn Williamson, deceased, Jimmy Williamson, P.C., Williamson & Rusnak, Cyndi Rusnak ("Cyndi"), Cyndi Rusnak, PLLC, Michael A. Pohl ("Michael"), and Law Office of Michael A. Pohl, PLLC (collectively, "appellees"), in appellants' suit against appellees for civil barratry,[2] civil conspiracy, aiding and abetting, and breach of fiduciary duty. In six issues, appellants contend that the trial court erred in granting appellees summary judgment, declining to reconsider its summary-judgment rulings as to certain appellants, denying appellants' motion for leave to file their fourth amended petition, and striking appellants' fourth amended petition.

We affirm in part and dismiss in part.

---

[1] We do not list appellants by name in the body of the opinion because of their large number.

[2] *See generally* TEX. GOV'T CODE ANN. § 82.0651. In 2011, the Texas Legislature enacted Texas Government Code section 82.0651. *See* Act of May 5, 2011, 82d Leg., R.S., ch. 94, § 2, sec. 82.0651, 2011 Tex. Gen. Laws 534, 535 (amended 2013) (current version at TEX. GOV'T CODE ANN. § 82.0651). In 2013, the Texas Legislature amended section 82.0651. *See* Act of May 15, 2013, 83d Leg., ch. 315, § 2, sec. 82.0651, 2013 Tex. Gen. Laws 1073, 1074 (current version TEX. GOV'T CODE ANN. § 82.0651). The 2013 amendments apply to a suit concerning conduct that occurred after September 1, 2013. In their briefing, appellants state that the "2011 version," i.e., the original version, of Texas Government Code section 82.0651 applies to this case.

4

**Background[3]**

On June 8, 2017, Dezzie Brumfield filed his original petition against appellees.[4] On July 26, 2017, appellants filed their first amended petition, which added 271 appellants more to the suit.

In their first amended petition, appellants alleged that after the Deepwater Horizon oil spill,[5] Jimmy Glenn Williamson ("Jimmy"), a Texas lawyer, individually and through his law firm, Jimmy Williamson, P.C., "concocted an illicit barratry scheme . . . by unlawfully soliciting thousands of potential clients to bring claims against" BP related to the Deepwater Horizon oil spill. Jimmy engaged his law partner Cyndi, another Texas lawyer, and her law firm, Cyndi Rusnak, PLLC,

---

[3]   To the extent that any of the parties direct this Court to documents attached to their briefing that are not otherwise contained in the appellate record, we note that the attachment of documents as exhibits or appendices to an appellate brief does not constitute a formal inclusion of such documents in the record for appeal, and we have not considered matters outside of the record in our review. *See McCann v. Spencer Plantation Invs., Ltd.*, No. 01-16-00098-CV, 2017 WL 769895, at *4 n.5 (Tex. App.—Houston [1st Dist.] Feb. 28, 2017, pet. denied) (mem. op.).

[4]   Initially, Brumfield sued Jimmy Glenn Williamson ("Jimmy"), Jimmy Williamson, P.C., Williamson & Rusnak, Cyndi, Cyndi Rusnak, PLLC, Michael, and Law Office of Michael A. Pohl, PLLC. While the suit was pending, Jimmy passed away, and Robert Williamson, as independent executor of the Estate of Jimmy Glenn Williamson, deceased, and the Estate of Jimmy Glenn Williamson, deceased, were added as parties to the suit.

[5]   *See In re Deepwater Horizon*, 739 F.3d 790, 795–96 (5th Cir. 2014) (explaining "millions of barrels oil . . . spill[ed] into the Gulf of Mexico" after "[a] 2010 explosion aboard the Deepwater Horizon, an offshore drilling rig" that was leased by British Petroleum Exploration & Production, Inc. ("BP") and noting after oil spill "[n]umerous lawsuits were filed against a variety of entities," including BP (emphasis omitted)).

5

to help him with the barratry scheme, and, together, Jimmy and Cyndi created a general partnership, Williamson & Rusnak, to practice law. Jimmy and Cyndi also engaged a third Texas lawyer, Michael, and his law firm, Law Office of Michael A. Pohl, PLLC, to aid in the barratry scheme. Together they formed a "barratry joint venture," with each of them agreeing to "split the profits from any fruits of the barratry joint venture with 40% of any attorney's fees derived from the [Deepwater Horizon] litigation going to [Michael] and 60% going to" Jimmy and Cyndi. Jimmy and Cyndi "agreed to split their 60% of the fees according to the amount of resources each put into the cases after [potential clients] had been improperly solicited."

To advance the barratry scheme, in April 2012, Michael met with Scott Walker, who provided consulting, public relations, and marketing services to several Mississippi companies. Michael told Walker that he and Jimmy sought to obtain potential clients affected by the Deepwater Horizon oil spill, with a goal of representing 100 Mississippi companies in their claims against BP. Michael conveyed to Walker that he and Jimmy wanted to hire Walker to "provide services to solicit [potential] clients" with claims against BP related to the Deepwater Horizon oil spill. Michael told Walker that Jimmy "had worked to secure a 7.8 billion dollar settlement [agreement] with BP," but Jimmy did not have a lot of clients to participate in the settlement agreement.

A few days after the meeting between Michael and Walker, Jimmy met with Walker and told him that "BP had structured [a] settlement [agreement] to include the whole [S]tate of Mississippi and . . . there were literally thousands of businesses and individuals who could be targeted for solicitation" to become clients. Because Michael and Jimmy wanted to hire an additional person "with government contacts," "who could obtain governmental entities to file" claims against BP, Walker introduced Michael and Jimmy to Steve Seymour, who was employed by Diamond Consulting and who was "a public official in Hancock County, Mississippi." When Michael and Jimmy met with Seymour, they told him that they were trying to get potential clients in Mississippi with claims against BP related to the Deepwater Horizon oil spill and Jimmy was the "absolute best lawyer in the field in handling [Deepwater Horizon] oil spill claims." (Internal quotations omitted.)

On or about May 19, 2012, Michael and Jimmy met with Walker and Seymour, and Jimmy "brought a stack of double sided, color flyers promoting the [legal] services of" Jimmy and Michael. Jimmy and Michael told Walker and Seymour to "use the flyers in their sales pitches to potential clients in an effort to sell [clients] on hiring" Jimmy, Michael, and Cyndi for their claims against BP. Jimmy and Michael instructed Walker and Seymour to call their friends and acquaintances "to try to get them to hire" Jimmy, Michael, and Cyndi for their claims related to the Deepwater Horizon oil spill and also "to make cold calls on people and

7

businesses they didn't know." Jimmy told Walker and Seymour that he also had a PowerPoint presentation "to be used to 'seal the deal' on potential clients that were hesitant," and Jimmy gave Walker and Seymour attorney-client contracts "to be used for signing up potential clients." Jimmy instructed Walker and Seymour to have potential clients sign blank attorney-contracts and then email the signed contracts to him.

The specifics of the barratry scheme were also discussed at the May 19, 2012 meeting between Michael, Jimmy, Walker, and Seymour. Michael and Jimmy explained that Jimmy would decide which groups of potential clients should be targeted, would decide the barratry scheme's marketing efforts, would provide marketing materials to use in soliciting potential clients, and would meet with and market himself, Jimmy Williamson, P.C., and Cyndi to potential clients with larger claims against BP. Jimmy stated that he would "handle the overhead expenses, including intake and staffing." (Internal quotations omitted.) As for Michael, he would handle Walker's and Seymour's compensation. And Cyndi would assist "with the intake of the [potential clients'] claims, review the claims, terminate any unsuitable claims, and . . . generally handle the processing of the claims" through the BP settlement claim process. Cyndi also directed Walker to "go after [potential clients with] claims that would produce the highest legal fees" and "to market to [potential] clients in certain geographic locations." (Internal quotations omitted.)

On or about May 25, 2012, Michael's law firm, Law Office of Michael A. Pohl, PLLC, entered into an agreement with Walker, Seymour, and a third person, Terry Robinson, owner of Robinson Holdings, LLC. Under the agreement, Michael, on behalf of the barratry scheme, agreed to pay Walker, Seymour, and Robinson—all non-lawyers—thirty percent of the forty percent of attorney's fees he was to receive from the barratry joint venture. Walker, Seymour, and Robinson agreed to split their thirty percent as follows: twelve percent to Walker, twelve percent to Seymour, and six percent to Robinson. Over the next month Walker, Seymour, and Robinson "distributed information about [Jimmy] to hundreds of Mississippians." (Internal quotations omitted.)

Later, Jimmy recruited another individual, Kirk Ladner, to join with Walker and Seymour, telling Walker, Seymour, and Ladner that they would be "multi-millionaires." (Internal quotations omitted.) On July 15, 2012, Michael's law firm, Law Office of Michael A. Pohl, PLLC, on behalf of the barratry scheme, signed a new agreement with Walker, Seymour, and Ladner, under which Walker, Seymour, and Ladner agreed to accept 22.5% of the forty percent of attorney's fees that Michael was to receive from the barratry joint venture. This new agreement also ended the relationship with Robinson.

According to appellants, Walker, Seymour, and Ladner then formed a company called Precision Marketing Group, LLC ("Precision Marketing Group"),

9

which was used as the "center of operations" for soliciting potential clients for Michael, Jimmy, and Cyndi. (Internal quotations omitted.) Michael, Jimmy, and Cyndi paid for "[t]he lease and furnishing and staff of th[e] company."

To advance the barratry scheme, Michael and Jimmy also met Dane Maxwell, whose company, CMV Investigations, LLC ("CMV Investigations"), provided lawyers with investigation services. Michael and Jimmy recruited Maxwell and CMV Investigations to solicit potential clients with claims against BP related to the Deepwater Horizon oil spill. Maxwell formed a team of contract workers "to make cold calls on potential clients." As part of the barratry scheme, Michael and Jimmy agreed to pay Maxwell $1,000 for each potential client that he and his team signed up, plus expenses.

Appellants also alleged that the barratry scheme paid about $5 million in "barratry pass through money" to Walker, Seymour, and Ladner for them to solicit potential clients and for them to "accumulate potential clients for" Michael, Jimmy, and Cyndi. (Internal quotations omitted.) Walker, Seymour, and Ladner, on behalf of Michael, Jimmy, and Cyndi, used the money they received to solicit potential clients with claims against BP. The barratry scheme paid Maxwell and CMV Investigations about $2.47 million for their solicitation of potential clients for Michael, Jimmy, and Cyndi.

10

According to appellants, essentially, a "barratry pyramid scheme" was developed, with Michael, Jimmy, and Cyndi at the top directing the solicitation efforts for potential clients. As part of this scheme, Michael, Jimmy, and Cyndi would give money to Walker, Seymour, Ladner, and Maxwell, who would then pay "case runners [to] work[] below" them. For instance, if Maxwell and CMV Investigations received $1,000 from Michael, Jimmy, and Cyndi for a potential client, Maxwell and CMV Investigations would give a "mid-level runner[]" working below them, $100 to $250 of the $1,000 for recruiting the potential client. And the mid-level runner would give a "low-level runner[]" who worked below him, $20 to $30 of the $100 to $250 if she recruited a potential client while working under the mid-level runner's umbrella. In other words, as part of the barratry pyramid scheme, low-level runners would receive $20 to $30 for each potential client that was recruited, mid-level runners would receive $100 to $250, less the amount given to the low-level runner, for each potential client that was recruited, and Maxwell and CMV Investigations would keep the remainder of the $1,000 given to them by Michael, Jimmy, and Cyndi for each potential client that was recruited.

Along with providing money, Michael, Jimmy, and Cyndi also instructed Walker, Seymour, Ladner, and Maxwell as well as other runners to "make cold calls on potential clients" and "to go business to business[] [and] door to door" to contact potential clients. Michael, Jimmy, and Cyndi told these individuals to tout Jimmy's

11

experience as a plaintiffs' lawyer who had participated in the original Deepwater Horizon litigation and his experience with the BP settlement claim process. Jimmy provided Walker, Seymour, Ladner, Maxwell, and the runners with promotional materials to give to potential clients. The information given to potential clients "always indicated that the potential client could have a lucrative [Deepwater Horizon oil spill] claim [against BP], which naturally led to [Walker, Seymour, Ladner, Maxwell, and the runners] presenting the [potential] client with [an attorney-client] contract" for Michael, Jimmy, and Cyndi. The potential clients did not know that Walker, Seymour, Ladner, and Maxwell or the runners were marketers, actively soliciting potential clients on behalf of Michael, Jimmy, and Cyndi or that Michael, Jimmy, and Cyndi were paying Walker, Seymour, Ladner, Maxwell, or the runners to solicit and sign-up potential clients on their behalf. Sometimes when Walker, Seymour, Ladner, Maxwell, or the runners were "not able to close [a] deal with a potential client," Jimmy would meet with the potential client and attempt to sign him or her up.

Appellants also alleged that one low-level runner, Jacqueline Taylor, was recruited to solicit clients for Michael, Jimmy, and Cyndi through CMV Investigations. Taylor owned a beauty salon in Mississippi and was contacted by Karen Boykin, another runner, "who was targeting small business owners." Boykin told Taylor that she had a claim against BP related to the Deepwater Horizon oil spill

and persuaded Taylor to hire Michael and Jimmy to file a claim on her behalf. Taylor completed a blank attorney-client contract that Jimmy had provided to Boykin. Boykin then told Taylor about the money that she was being paid to solicit potential clients and gave her the business card of Monica Chaney, a "BP Claims Consultant" for CMV Investigations. After Taylor called Chaney, Taylor was also hired to solicit potential clients for Michael, Jimmy, and Cyndi. Chaney told Taylor that Michael and Jimmy had employed CMV Investigations, and Chaney gave Taylor blank attorney-client contracts for Williamson & Rusnak and Law Office of Michael A. Pohl, PLLC.

According to Taylor, she was trained to target business owners with her solicitations and "when those claims ran out," she was told to target farmers and landowners. Taylor was given a map and "told to focus on particular zones." She was paid $20 to $30 for each potential client that she brought in, and Chaney was paid $100 to $150 for each potential client that Taylor brought in. Taylor would send Chaney potential clients' information every week and she was "paid through a cash card from Wal-Mart." Taylor was also reimbursed for any expenses associated with her solicitation of potential clients. Taylor was paid to solicit more than 100 potential clients for Michael, Jimmy, and Cyndi, and she never told the potential clients that she was being paid to solicit them.

13

Another runner, Magdalena Santana, was approached by Seymour in July 2012 and recruited by Michael and Jimmy for a "marketing position" that required her to "find [potential] clients [with claims against BP related to the Deepwater Horizon oil spill] and sign them up" to be represented legally by Michael, Jimmy, and Cyndi. (Internal quotations omitted.) According to Santana, her position required her "to make cold calls on business owners and managers to try to get them to sign blank [attorney-client] contracts with [Michael] and [Jimmy]." (Internal quotations omitted.) Santana was paid $250 for each potential client that she "signed up." (Internal quotations omitted.) Santana received payment through Precision Marketing Group, and Michael told Santana that he could not pay her directly for her solicitation efforts because "it was illegal for him to pay [her] directly, and that's why the money had to go through some company." (Alteration in original) (Internal quotations omitted.)

As for potential clients, Michael told Santana to "target businesses in the high-paying settlement zones[,] such as beachfront properties, hotels, taxi companies, commercial fisherman, nightclubs, and other tourism businesses." (Internal quotations omitted.) Jimmy instructed Santana "to go business to business[] [and] door to door asking people if they had losses from the [Deepwater Horizon] oil spill." (Internal quotations omitted.) Jimmy, like Michael, also told Santana to "target businesses in high paying [settlement] zones and in tourism zones,

14

since they were getting [higher] payouts" from the BP settlement claims process. (Internal quotations omitted.) And she was told "to target churches because they were easy as they didn't have to provide tax returns." (Internal quotations omitted.) If she had trouble signing up a "big fish" as a potential client, then Michael and Jimmy would visit that potential client personally. (Internal quotations omitted.)

Appellants also alleged that Santana was given a map showing the high-paying settlement zones, and, like other runners, she was given a binder with blank attorney-client contracts for Michael, Jimmy, and Cyndi and pamphlets with Jimmy's name on them to distribute to potential clients. And Santana was emailed blank attorney-client contracts for Michael and Jimmy.

Santana solicited seventy-seven potential clients in her first week in her "marketing position" and she was "paid bonuses personally" by Jimmy for signing up "the big fish clients." (Internal quotations omitted.) Michael and Jimmy both knew that Santana was "cold-calling businesses to get [potential clients with Deepwater Horizon oil spill] claims" against BP, and Michael and Jimmy gave Santana "specific instructions to knock on doors to drum up clients for them." (Internal quotations omitted.) In total, Santana signed up 1,500 potential clients for Michael and Jimmy and none of them were her friends, family members, or colleagues. After Santana solicited potential clients for Michael, Jimmy, and Cyndi,

Michael would meet her at a restaurant to sign the attorney-client contracts that she had obtained from potential clients.

According to appellants, by the end of 2012, up to ten thousand individuals had been improperly solicited through Michael, Jimmy, and Cyndi's barratry scheme. At that time, Jimmy and Cyndi informed Michael that Jimmy wanted to stop participating in the scheme. But Michael continued to fund and operate the barratry scheme on his own, and he directed Walker, Seymour, Ladner, and the runners to send any new potential clients only to him. Michael handled the claims of these potential clients as a partner of Pohl & Berk, LLP ("Pohl & Berk"). Pohl & Berk also accepted some of the potential clients that the original barratry joint venture had rejected, and Michael handled other claims related to the Deepwater Horizon oil spill on his own, through his law firm, or as a joint venture with other law firms.

Appellants also alleged that in April 2013, Walker learned that he was under investigation by federal authorities, unrelated to the barratry scheme, and Michael, Jimmy, and Cyndi then became fearful that their barratry scheme would be discovered. Thus, "[i]n an effort to distance themselves from [any] misconduct, [they] decided to belatedly decline or [to] terminate representation of the[ir] improperly solicited" clients. Beginning in May 2013 and continuing on, Michael, Jimmy, and Cyndi terminated the attorney-client relationship with about 8,000

improperly solicited clients through letters. The letters sent by Michael, Jimmy, and Cyndi, "gave the impression that [they] were terminating the[ir] representation [of a client] either because the client's claim was no[t] good or because of the client's fault." Michael, Jimmy, and Cyndi worded the letters to discourage their former clients from seeking new legal representation because they feared that the barratry scheme would be discovered. Because Michael, Jimmy, and Cyndi owed their clients fiduciary duties, the clients believed that their claims against BP related to the Deepwater Horizon oil spill were not worth pursing or that they could not proceed on their claims. A "majority of [the] terminated clients" were dissuaded from pursuing their claims against BP by Michael, Jimmy, and Cyndi, making them unable to collect substantial awards through the BP settlement claims process. Additionally, some terminated clients were barred from bringing their otherwise viable claims against BP because certain deadlines passed soon after Michael, Jimmy, and Cyndi terminated their representation of their former clients.

According to appellants, in 2017, Michael, Jimmy, and Cyndi's terminated clients first learned of the barratry scheme devised by Michael, Jimmy, and Cyndi. Yet, Jimmy still had his assistant, Brenda Kellen, make calls to the terminated clients in 2017, advising those clients that any claims of barratry against Michael, Jimmy, or Cyndi were a "scam." (Internal quotations omitted.)

17

Appellants' first amended petition contains additional allegations for each individual appellant about the solicitation of that appellant in connection with the alleged barratry scheme. For instance, as to Brumfield, the petition states that he was a truck driver doing business as LAD Enterprises. Sometime in 2012, he received an unsolicited phone call from a runner, Geraldine, who purportedly worked for CMV Investigations. Geraldine told Brumfield that "he was guaranteed $50,000 if he hired" appellees "to file a claim against BP" related to the Deepwater Horizon oil spill. (Internal quotations omitted.) Geraldine gave Brumfield appellees' telephone numbers and urged Brumfield to call them. Geraldine, in accord with her training, touted Jimmy's legal abilities to "induce Brumfield to contact" appellees.

Based on Geraldine's solicitation, Brumfield contacted appellees and provided his information to an employee at Williamson & Rusnak, who then sent Brumfield paperwork to completed. Brumfield completed the paperwork and sent it back to Williamson & Rusnak, and from 2012 to 2015, he continued to provide Williamson & Rusnak with "all the information necessary to support his BP economic loss claim, incurring approximately $1,200 in expenses because of the [improper] solicitation." In August 2015, Kellen, Jimmy's assistant, called Brumfield and told him that "the firm would no longer assist him in his . . . claims" against BP related to the Deepwater Horizon oil spill. Brumfield also received a

18

letter from Cyndi confirming the rejection of Brumfield's claim and advising him that he had until September 16, 2015—less than three weeks from receipt of the letter—to file a claim against BP. According to appellants, each appellant was improperly solicited in connection with Michael's, Jimmy's, and Cyndi's barratry scheme.

In their first amended petition, appellants brought claims against appellees for civil barratry,[6] civil conspiracy, and aiding and abetting.[7] As to their civil barratry claims, appellants alleged that appellees, with the intent to obtain an economic benefit, violated several provisions of Texas Penal Code section 38.12, which prohibits barratry,[8] and Texas Disciplinary Rule of Professional Conduct 7.03 concerning barratry.[9] According to appellants, appellees engaged in improper solicitation of potential clients and procured contracts for legal services, or employment, as a result.

---

[6] *See* Act of May 5, 2011, 82d Leg., R.S., ch. 94, § 2, sec. 82.0651(a), (b), 2011 Tex. Gen. Laws 534, 535 (amended 2013).

[7] Appellants also brought alternative negligence claims against appellants, which they later non-suited.

[8] *See* TEX. PENAL CODE ANN. § 38.12(a)(4), (b).

[9] *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 7.03(a)–(d), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, appl. A. Appellants alleged that appellees violated "the[] rule[] by paying or offering to pay non-lawyers millions of dollars to solicit and refer prospective clients to them for representation in the [Deepwater Horizon] litigation obtained through improper solicitation." Appellants were all persons who were improperly solicited by conduct that violated of Texas Disciplinary Rule of Professional Conduct 7.03.

As for their civil conspiracy and aiding and abetting claims, appellants alleged that appellees were "members of a combination of two or more persons," "[t]he object of the combination was to accomplish an unlawful purpose by unlawful means," i.e., the improper solicitation of appellants and other persons, and,

> [t]he members . . . had a meeting of the minds on the object or course of action[:] (1) to pay, give or offer a person money to solicit employment on behalf of [appellees]; (2) in knowingly financing the commission of barratry and solicitation in violation of the laws of Texas; [(3)] by investing funds [appellees] knew or believed were intended to further the commission of barratry and/or; (4) in knowingly accepting employment within the scope of a person's license as an attorney that violates the laws of Texas concerning barratry.

Appellees committed an unlawful, overt act in furtherance of the barratry and improper solicitation, and appellees were jointly and severally liable for each other's violations of the Texas Penal Code, Texas Government Code section 82.0651, and the Texas Disciplinary Rules of Professional Conduct, all of which prohibit barratry.

Appellees answered,[10] generally denying the allegations in appellants' petition and asserting certain affirmative defenses, including that appellants' claims were barred by the applicable statute of limitations.

On December 29, 2017, appellees moved for partial summary judgment on appellants' civil barratry, civil conspiracy, and aiding and abetting claims,[11]

---

[10]    Appellees filed separate answers. The appellate record contains these answers as well as any amended answers.

[11]    Appellees did not move for partial summary judgment on the civil barratry, civil conspiracy, and aiding and abetting claims of six appellants—Gloria Clemons,

20

arguing that they were entitled to judgment as a matter of law because appellants' civil barratry claims were barred by either a two-year statute of limitations or a four-year statute of limitations and neither the discovery rule, the *Hughes*[12] tolling doctrine, nor the doctrine of fraudulent concealment applied to appellants' claims. Further, because appellants' civil barratry claims were time barred, appellees argued that appellants' civil conspiracy and aiding and abetting claims were also time barred as they were derivative of the civil barratry claims.

Appellees attached certain exhibits to their motion, including the affidavits of Cyndi and Michael. The summary-judgment evidence shows that the last time that any of appellants signed a representation agreement or an attorney-client contract related to their claims against BP for the Deepwater Horizon oil spill was in May 2013. Thus, appellees asserted that appellants' civil barratry claims would have accrued on or before the date each appellant signed a representation agreement or an attorney-client contract with appellees, with the latest date being in May 2013.

In their response to appellees' partial-summary-judgment motion, appellants argued that appellees were not entitled to judgment as a matter of law on their civil barratry claims because a four-year statute of limitations applied, appellees did not

---

Thom Do, Genetter January, Vanessa Marks, Evangeline Ramirey, and Wilber Riggs (the "six appellants"). Appellees also did not move for summary judgment on any appellants' then-pending alternative negligence claims.

[12] *See Hughes v. Mahaney & Higgins*, 821 S.W.2d 154 (Tex. 1991).

21

establish when each appellant's civil barratry claim accrued, appellees did not negate the application of the discovery rule, which tolls the statute of limitations until a plaintiff discovers or should have discovered the facts establishing the elements of his cause of action, and the *Hughes* and *McClung*[13] tolling doctrines applied to appellants' civil barratry claims. Appellants also argued that because their civil barratry claims were not time barred, their civil conspiracy and aiding and abetting claims were also not time barred. Appellants attached certain exhibits to their response, including a copy of a "Contract of Employment" listing Michael and Jimmy as parties to the agreement.

In their reply, appellees asserted that appellants' civil barratry claims accrued when the alleged improper solicitation occurred, appellants pleaded that the solicitation occurred before the execution on any representation agreements or attorney-client contracts signed by appellants, and appellants signed representation agreements or attorney-client contracts more than four years before appellants sued appellees for civil barratry. Appellees also asserted that the discovery rule did not apply to appellants' civil barratry claims, and even if it did, the statute of limitations would not be tolled beyond the date that appellants executed their representation agreements or attorney-client contracts because they knew or should have known

---

[13] *See McClung v. Johnson*, 620 S.W.2d 644 (Tex. App.—Dallas 1981, writ ref'd n.r.e.). Appellants reference *McClung* in one of their supplemental responses.

the facts that made the basis of their civil barratry claims before executing those documents. Appellees reiterated that appellants could not rely on the *Hughes* tolling doctrine to assert that their claims were not time barred.

On July 31, 2018, the trial court granted appellees partial summary judgment on 266 appellants' civil barratry, civil conspiracy, and aiding and abetting claims and dismissed those claims against appellees. The trial court's order made no rulings related to the civil barratry, civil conspiracy, and aiding and abetting claims of the Gloria Clemons, Thom Do, Genetter January, Vanessa Marks, Evangeline Ramirey, and Wilber Riggs (the "six appellants").

Meanwhile, before the trial court's ruling on appellees' initial partial-summary-judgment motion, appellants filed second and third amended petitions, alleging, for the first time, breach of fiduciary duty claims against appellees. As to their breach of fiduciary duty claims, appellants alleged that a fiduciary relationship existed between "some" appellants and appellees and appellees owed those appellants the following fiduciary duties: the duty to act with loyalty and utmost good faith; the duty to act with absolute perfect candor, openness, and honestly, and without deception or concealment, no matter how slight; the duty to refrain from self-dealing, which extended to dealings with persons whose interests were closely identified with those of the fiduciary; the duty to act with integrity of the strictest kind; the duty of fair, honest dealing; the duty of full disclosure, that is,

the duty not to conceal matters that might influence a fiduciary to act in a matter that was prejudicial to appellants; the duty to represent appellants with undivided loyalty; and the duty to make full and fair disclosure of every facet regarding the matters material to the representation. Further, according to appellants, appellees knowingly and intentionally breached the above fiduciary duties by concealing that they had obtained the right to represent appellants through improper solicitation methods—the barratry joint venture or the barratry scheme. And appellees benefitted from their breach by obtaining attorney's fees from appellants and by concealing the improper solicitation so that they could argue here that the statute of limitations barred appellants' civil barratry claims.

On November 8, 2018, appellees moved for partial summary judgment on appellants' breach of fiduciary duty claims,[14] arguing that they were entitled to judgment as a matter of law because appellants' breach of fiduciary duty claims were barred by the applicable four-year statute of limitations, appellants' breach of fiduciary duty claims were "just a recast of [appellants'] time-barred [civil] barratry claims," appellants' breach of fiduciary duty claims stemmed from the allegation that appellees concealed their improper solicitation, appellants alleged their breach

---

[14] Appellees moved for partial summary judgment on all 272 appellants' breach of fiduciary duty claims. At the time the November 8, 2018 partial-summary-judgment motion was filed, appellants' alternative negligence claims remained pending as did the six appellants' civil barratry, civil conspiracy, and aiding and abetting claims against appellees.

of fiduciary duty claims as "a tactical move to prevent all of the barratry-related claims from being dismissed at once," the *Hughes* tolling doctrine did not apply to appellants' breach-of-fiduciary-duty claims, limitations was not tolled "simply because of the existence of the attorney-client relationship," and appellants could not recover as damages for their breach of fiduciary duty claims the $10,000 civil barratry penalty provided for by Texas Government Code section 82.0651. Appellants attached certain exhibits to their motion, including the affidavits of Cyndi and Michael.

In their response to appellees' partial-summary-judgment motion, appellants asserted that their breach-of-fiduciary-duty claims were not time barred, their claims did not accrue until July 31, 2018 because they did not suffer a legal injury as a result of any breach of fiduciary duty until the trial court dismissed appellants' civil barratry claims against appellees, the discovery rule applied to appellants' claims, the *Hughes* and *McClung* tolling doctrines applied to toll the applicable statute of limitations, and appellees were "not entitled to summary judgment on [appellants'] claim[s] for" the civil barratry penalty.

In their reply, appellees reiterated that they were entitled to judgment as a matter of law on appellants' breach of fiduciary duty claims because appellants, in their second and third amended petitions, had recast their civil barratry claims as breach of fiduciary duty claims and appellants' breach of fiduciary duty claims

25

hinged on appellees' alleged concealment of their barratry scheme and improper solicitation of appellants. According to appellees, appellants' breach of fiduciary duty claims "boil down to barratry claims," and appellants' civil barratry claims were time barred. Appellees also asserted that the *Hughes* and *McClung* tolling doctrines did not apply to appellants' breach-of-fiduciary-duty claims, the breach of fiduciary duties were time barred, and appellants could not recover as damages the $10,000 civil barratry penalty provided for by Texas Government Code section 82.0651.

On January 2, 2019, the trial court granted appellees partial summary judgment on appellants' breach-of-fiduciary-duty claims and dismissed those claims against appellees.

On March 15, 2019, after the trial court's deadline to amend or supplement pleadings had passed, appellants filed a motion for leave to file their fourth amended petition, along with their fourth amended petition. In their motion, appellants acknowledged that per the trial court's docket control order, "all amendments or supplements to any pleadings were required to be filed by February 11, 2019." But appellants asserted that on February 13, 2019, appellants received a letter from Williamson & Rusnak that enclosed settlement checks and correspondence from Cyndi. The correspondence revealed that fourteen appellants—Timothy Flynn, Larry Cobb, Eric King, Felix Lee, Jeff Jolet, John Pimentel, Laurie Quin, Grayson

26

White, Otis Winston, Eldridge Scott, Terri Torries, Tim Chambliss, William Smith, and Vance Woods (the "fourteen appellants")—had "received additional settlement monies from their economic loss claims sometime in the year 2018," and appellees had "deducted attorney's fees from th[o]se recoveries." (Internal quotations omitted.) Appellants asserted that by delaying payment to the fourteen appellants, appellees committed "new breaches of fiduciary duty" which appellants did not know about until after the pleading deadline had passed. Thus, appellants sought leave to amend their petition to reassert their breach of fiduciary duty claims and their civil barratry claims under Texas Government Code § 82.0651(a). According to appellants, appellees could not show prejudice or surprise.

In their fourth amended petition, filed along with their motion for leave, all 272 appellants attempted to "reassert[]" claims against appellees for civil barratry, civil conspiracy, aiding and abetting, and breach of fiduciary duty.[15] Appellants did not limit the claims to the fourteen appellants who "received additional settlement monies from their economic loss claims sometime in the year 2018." (Internal quotations omitted.)

In response to the filing of appellants' motion for leave and their fourth amended petition, appellees objected and argued that the trial court should deny appellants' motion for leave and strike the fourth amended petition because the

---

[15] Appellants also continued to allege their alternative negligence claims.

fourth amended petition was not filed until after the deadline for amending pleadings, it was filed more than seven days after the trial court's summary-judgment hearings, the fourth amended petition caused unfair surprise, and the trial court had already rendered judgment on the claims that appellants sought to amend.

On April 15, 2019, the trial court sustained appellees' objections to the motion for leave, denied appellants' motion for leave to amend, and struck appellants' fourth amended petition.

Before the trial court struck appellants' fourth amended petition, the fourteen appellants,[16] on March 28, 2019, moved for the trial court to reconsider and vacate its July 31, 2018 and January 2, 2019 partial-summary-judgment orders which dismissed, among other claims, their civil barratry and breach of fiduciary duty claims against appellees. The fourteen appellants asserted that their civil barratry claims were not time barred because a four-year statute of limitations applied, the civil barratry claims did not accrue when the improper solicitation was made, and as alleged in the fourth amended petition, appellees breached their fiduciary duty to the fourteen appellants by wrongfully withholding their settlement funds which appellees had received in 2018. On April 15, 2019, after appellees responded to the

---

[16]    The fourteen appellants are Flynn, Cobb, King, Lee, Jolet, Pimentel, Quin, White, Winston, Scott, Torries, Chambliss, Smith, and Woods.

28

fourteen appellants' motion to reconsider and vacate, the trial court denied the motion to reconsider its previous summary-judgment rulings.

Finally, on April 26, 2019, appellees moved for summary judgment on the six appellants' civil barratry, civil conspiracy, and aiding and abetting claims,[17] arguing that they were entitled to judgment as a matter of law because the six appellants' civil barratry claims were barred by a two-year statute of limitations because appellees never represented the six appellants and their causes of action against appellees sound in tort. Further, neither the discovery rule nor the doctrine of fraudulent concealment applied to the claims. The six appellants' civil conspiracy and aiding and abetting claims are derivative and also time barred. To the extent that the six appellants brought breach of fiduciary duty claims against appellees, and such claims had not already been disposed of by the trial court, appellees argued that because they had never represented the six appellants, they could not have breached any alleged fiduciary duty and were entitled to judgment as a matter of law.

---

[17]     Before appellees moved for summary judgment on the six appellants' civil barratry, civil conspiracy, and aiding and abetting claims, appellants non-suited their alternative negligence claims against appellees. On April 8, 2019, the trial court signed an order dismissing appellants' alternative negligence claims without prejudice. Thus, at the time appellees filed their April 26, 2019 summary-judgment motion, the only claims pending in the trial court were the six appellants' civil barratry, civil conspiracy, and aiding and abetting claims. The six appellants are Clemons, Do, January, Marks, Ramirey, and Riggs.

In their response to appellees' summary-judgment motion, the six appellants argued that appellees were not entitled to judgment as a matter of law on their civil barratry claims because a four-year statute of limitations applied and appellees did not negate the application of the discovery rule.

On June 3, 2019, the trial court granted appellees summary judgment on the six appellants' civil barratry, civil conspiracy, and aiding and abetting claims and dismissed those claims against appellees.[18]

**Scope of Appeal**

As an initial matter, appellees argue that we lack jurisdiction to review the six appellants' appeal challenging the trial court's orders granting appellees summary judgment on the six appellants' civil barratry, civil conspiracy, aiding and abetting, and breach of fiduciary duty claims and dismissing those claims against appellees because the six appellants did not timely file a notice of appeal.[19] *See Heckman v. Williamson Cty.*, 369 S.W.3d 137, 146 n.14 (Tex. 2012) ("[C]ourts always have jurisdiction to determine their own jurisdiction." (internal quotations omitted)); *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004) (reviewing court is obligated to review issues affecting jurisdiction).

---

[18] *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001) ("[I]f a court has dismissed all of the claims in a case but one, an order determining the last claim is final.").

[19] The six appellants are Clemons, Do, January, Marks, Ramirey, and Riggs.

We also have pending before this Court the six appellants' March 24, 2020 motion for leave to amend the notice of appeal filed after appellants and appellees filed their opening briefs in this case.[20]  *See* TEX. R. APP. P. 25.1(g) ("After the appellant's brief is filed, the notice [of appeal] may be amended only on leave of the appellate court and on such terms as the court may prescribe.").  Michael and Law Office of Michael A. Pohl, PLLC objected to the motion for leave to amend and moved to strike the amended notice of appeal filed by the six appellants.  *See id.* 25.1(g) ("The amended notice [of appeal] is subject to being struck for cause on the motion of any party affected by the amended notice.").  We carried these motions with the case and address them now.

Any party "seek[ing] to alter the trial court's judgment or other appealable order" must timely file a notice of appeal.  *Id.* 25.1(c).  A notice of appeal must "state the name of each party filing the notice."  *Id.* 25.1(d)(5).  Generally, if a party fails to timely file a notice of appeal, we have no jurisdiction to address the merits of the party's appeal.  *See Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 737–38 (Tex. 2001); *Brashear v. Victoria Gardens of McKinney, L.L.C.*, 302 S.W.3d 542,

---

[20]    Appellants, including the six appellants, filed their appellants' brief on November 1, 2019.  Appellees filed their appellees' briefs on February 3, 2020.  The six appellants filed their motion for leave to amend the notice of appeal on March 24, 2020—the same day that appellants filed their reply brief.

31

545–46 (Tex. App.—Dallas 2009, no pet.) (timely filing of notice of appeal is jurisdictional prerequisite).

On December 29, 2017, appellees filed, in the trial court, a motion for partial summary judgment on 266 appellants' civil barratry, civil conspiracy, and aiding and abetting claims.[21] At the time, appellees did not move for partial summary judgment on the six appellants' civil barratry, civil conspiracy, and aiding and abetting claims. On July 31, 2018, the trial court granted appellees partial summary judgment on 266 appellants' civil barratry, civil conspiracy, and aiding and abetting claims and dismissed those claims against appellees. The trial court's order made no rulings related to the civil barratry, civil conspiracy, and aiding and abetting claims of the six appellants.

On November 8, 2018, appellees filed a motion for partial summary judgment on appellants' breach of fiduciary duty claims.[22] On January 2, 2019, the trial court granted appellees partial summary judgment on appellants' breach of fiduciary duty claims and dismissed those claims against appellees.

---

[21] At the time appellees moved for partial summary judgment, appellants' alternative negligence claims were still pending as were the six appellants' civil barratry, civil conspiracy, and aiding and abetting claims.

[22] At the time appellees moved for partial summary judgment, appellants' alternative negligence claims were still pending as were the six appellants' civil barratry, civil conspiracy, and aiding and abetting claims.

On March 15, 2019, after the trial court's deadline to amend or supplement pleadings had passed, appellants filed a motion for leave to file their fourth amended petition, along with their fourth amended petition. On April 15, 2019, the trial court, in two orders, denied appellants' motion for leave to file their fourth amended petition, sustained appellees' objections to the motion for leave, and struck appellants' fourth amended petition.

On March 28, 2019, the fourteen appellants[23] filed a motion to reconsider and vacate the trial court's July 31, 2018 and January 2, 2019 partial-summary-judgment orders. On April 15, 2019, the trial court denied the fourteen appellants' motion to reconsider and vacate its previous summary-judgment rulings.

On April 5, 2019, appellants non-suited their alternative negligence claims against appellees. On April 8, 2019, the trial court "consider[ed] the [n]otice" of non-suit and dismissed appellants' negligence claims against appellees without prejudice.

On April 30, 2019, 266 appellants filed a notice of appeal of the trial court's July 31, 2018 partial-summary-judgment order, January 2, 2019 partial-summary-judgment order, the April 15, 2019 order denying the fourteen appellants' motion to reconsider, and the April 15, 2019 orders denying appellants'

---

[23] The fourteen appellants do not include any of the six appellants. The fourteen appellants are Flynn, Cobb, King, Lee, Jolet, Pimentel, Quin, White, Winston, Scott, Torries, Chambliss, Smith, and Woods.

motion for leave to file their fourth amended petition, sustaining appellees' objections, and striking appellants' fourth amended petition. The notice of appeal noted that some appellants "remain[ed] in th[e] litigation," but that 266 appellants filed their notice of appeal because those 266 appellants had non-suited their remaining alternative negligence claims against appellees and had no other claims pending. Attached to the notice of appeal is a list naming each of the 266 appellants by name. The names of the six appellants are not included in the list.

On April 26, 2019, appellees filed a motion for summary judgment on the six appellants' civil barratry, civil conspiracy, and aiding and abetting claims.[24] On June 3, 2019, the trial court granted appellees summary judgment on the six appellants' civil barratry, civil conspiracy, and aiding and abetting claims and dismissed those claims against appellees. The trial court's June 3, 2019 summary-judgment order, which disposed of all remaining parties and claims, constituted a final judgment. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001) ("[I]f a court has dismissed all of the claims in a case but one, an order determining the last claim is final."); *Miner Dederick Constr., LLP v. Gulf Chem. & Metallurgical Corp.*, 403 S.W.3d 451, 461–62 (Tex. App.—Houston [1st Dist.] 2013), *pet. denied*, 455 S.W.3d 164 (Tex. 2015).

---

[24] At the time appellees filed their summary-judgment motion, the only claims still pending in the trial court were the six appellants' civil barratry, civil conspiracy, and aiding and abetting claims.

On March 24, 2020, the six appellants filed a motion for leave to amend notice of appeal in this Court, requesting leave to amend the April 30, 2019 notice of appeal to include themselves as appellants in this case and to include the trial court's June 3, 2019 order granting appellees' summary judgment and dismissing the six appellants' civil barratry, civil conspiracy, and aiding and abetting claims. The six appellants asserted that they had made a bona fide attempt to invoke appellate jurisdiction by filing the April 30, 2019 notice of appeal, the April 30, 2019 notice of appeal was simply premature as to the six appellants, and, alternatively, they were entitled to leave to amend the April 30, 2019 notice of appeal.

## A.    April 30, 2019 Notice of Appeal

The April 30, 2019 notice of appeal was filed by 266 appellants and did not include the six appellants. Those 266 appellants sought to appeal the trial court's July 31, 2018 partial-summary-judgment order, January 2, 2019 partial-summary-judgment order, the April 15, 2019 order denying the fourteen appellants' motion to reconsider, and the April 15, 2019 orders denying appellants' motion for leave to file their fourth amended petition, sustaining appellees' objections, and striking the fourth amended petition. When the April 30, 2019 notice of appeal was filed, the six appellants' civil barratry, civil conspiracy, and aiding and abetting claims against appellees were still pending in the trial court. Thus, the trial court's July 31, 2018, January 2, 2019, and April 15, 2019 orders were

35

interlocutory, and final judgment had not yet been rendered in the case. *See Lehmann*, 39 S.W.3d at 205 ("[W]hen there has not been a conventional trial on the merits, an order or judgment is not final for purposes of appeal unless it actually disposes of every pending claim and party or unless it clearly and unequivocally states that it finally disposes of all claims and all parties."); *Davati v. McElya*, 530 S.W.3d 265, 266–67 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

Generally, appeals may only be taken from final judgments. *Lehmann*, 39 S.W.3d at 195. Because there was no final judgment when 266 appellants filed their April 30, 2019 notice of appeal, the notice of appeal was premature. *See* TEX. R. APP. P. 26.1, 27.1(a); *In re Norris*, 371 S.W.3d 546, 552 (Tex. App.—Austin 2012, orig. proceeding) (notice of appeal is premature if filed before final judgment signed). Yet a premature notice of appeal is effective and deemed filed on the day of, but after, the trial court renders final judgment. *See* TEX. R. APP. P. 27.1(a); *Mejia-Rosa v. John Moore Servs., Inc.*, No. 01-17-00955-CV, 2019 WL 3330972, at *4 (Tex. App.—Houston [1st Dist.] July 25, 2019, no pet.) (mem. op.); *Guerra v. State*, No. 14-16-00719-CV, 2018 WL 1057502, at *1 (Tex. App.—Houston [14th Dist.] Feb. 27, 2018, no pet.) (mem. op.).

On June 3, 2019, after 266 appellants filed their notice of appeal and while their appeal was pending, the trial court granted summary judgment on the six appellants' civil barratry, civil conspiracy, and aiding and abetting claims against

36

appellees. These were the last remaining claims pending between the parties in the trial court. *See Gee v. Mirwis*, No. 01-04-00883-CV, 2006 WL 859286, at *3–4 (Tex. App.—Houston [1st Dist.] Mar. 30, 2006, no pet.) (mem. op.) (concluding trial court's last order constituted final judgment because it disposed of only remaining claim against only remaining party). At that point, the trial court's July 31, 2018, January 2, 2019, and April 15, 2019 orders that 266 appellants had appealed from became final because the trial court had finally resolved all of the remaining claims between the parties. *See Lehmann*, 39 S.W.3d at 200; *Webb v. Jorns*, 488 S.W.2d 407, 408–09 (Tex. 1972) (recognizing interlocutory order became final for purposes of appeal when it merged into final order that disposed of remainder of case); *H.B. Zachry Co. v. Thibodeaux*, 364 S.W.2d 192, 193 (Tex. 1963) (holding prior interlocutory orders merged into subsequent order disposing of remaining parties and issues, creating final and appealable judgment); *Ammerman v. Ranches of Clear Creek Cmty. Ass'n*, 562 S.W.3d 622, 642–43 (Tex. App.—Houston [1st Dist.] 2018, no pet.). Thus, the April 30, 2018 notice of appeal, although prematurely filed, invoked this Court's jurisdiction over the appeal of 266 appellants.

The six appellants argue that this Court has jurisdiction over their appeal because they made a bona fide attempt to invoke appellate jurisdiction through the April 30, 2019 notice of appeal—meaning that their notice of appeal was also premature, but not ineffective. *See* TEX. R. APP. P. 27.1(a); *Warwick Towers Council*

37

*of Co-Owners v. Park Warwick LP*, 244 S.W.3d 838, 839 (Tex. 2008) (holding, in determining presence of jurisdiction, appellate courts do not look to form or substance of instrument filed but consider whether it reflected a bona fide attempt to invoke appellate jurisdiction). But the April 30, 2019 notice of appeal was not filed by the six appellants; it was filed by the other 266 appellants does not include the six appellants' names in the list of appellants who filed the notice of appeal. Because the six appellants did not file the April 30, 2019 notice of appeal, it cannot be characterized as a premature effort or a bona fide attempt by them to invoke this Court's appellate jurisdiction. *See* TEX. R. APP. P. 25.1(c) (any party seeking to alter a judgment must file timely notice of appeal); *In re Estate of Curtis*, 465 S.W.3d 357, 363–66 (Tex. App.—Texarkana 2015, pet. dism'd) (appellant, who was not named in original notice of appeal, could not rely on timely notice of appeal filed by other appellant to argue that it had made "a bona fide attempt to invoke appellate jurisdiction" through original notice of appeal); *Crofton v. Amoco Chem. Co.*, 01-01-00526-CV, 2003 WL 21297588, at *3 (Tex. App.—Houston [1st Dist.] May 30, 2003, pet. denied) (mem. op.) (holding this Court lacked jurisdiction over appeal of plaintiff who was not named in original or first amended notice of appeal); *see also Cortez v. Brown*, No. 03-17-00365-CV, 2019 WL 961672, at *3 & n.3 (Tex. App.—Austin Feb. 28, 2019, pet. denied) (mem. op.) (party obligated to file own notice of appeal); *Ugwa v. Ugwa*, No. 05-16-01116-CV, 2018 WL 2715405, at *2

& n.4 (Tex. App.—Dallas June 6, 2018, no pet.) (mem. op.) (because notice of appeal in the record stated it was "filed by Deborah," court lacked jurisdiction over other party's appeal and only considered Deborah's appeal (internal quotations omitted)); *Tex. State Tech. Coll. v. Cressman*, 172 S.W.3d 61, 64 n.2 (Tex. App.—Waco 2005, pet. denied) (party was "not a party to th[e] appeal" because "his name [was] not included in the notice of appeal"); *Wright v. Fowler*, 991 S.W.2d 343, 349 n.9 (Tex. App.—Fort Worth 1999, no pet.) (noting party not listed on notice of appeal had not perfected appeal and was not a party to appeal).

### B.    March 24, 2020 Amended Notice of Appeal

On March 24, 2020, the six appellants filed a motion for leave to amend the April 30, 2019 notice of appeal. Although the March 24, 2020 amended notice of appeal adds the trial court's June 3, 2019 summary-judgment order to the list of trial court orders from which appeal is being sought, it excludes the names of the six appellants from the list of appellants seeking to appeal. The amended notice of appeal states: "Plaintiffs Dezzie Brumfield d/b/a LAD Enterprises, et al., *identified on Exhibit 1*, file this Amended Notice of Appeal and desire to appeal the [listed] orders or judgments[.]" (Emphasis added.) Still absent from Exhibit 1 are the names of the six appellants. Yet even if we were to assume that the six appellants are among the parties who filed the March 24, 2020 amended notice of appeal, the rules

permitting amendment of a notice of appeal do not allow the type of amendment that the six appellants seek in this case.

Texas Rule of Appellate Procedure 25.1(g) states:

An amended notice of appeal *correcting a defect or omission* in an earlier filed notice may be filed in the appellate court at any time before the appellant's brief is filed. The amended notice is subject to being struck for cause on the motion of any party affected by the amended notice. After the appellant's brief is filed, the notice may be amended only on leave of the appellate court and on such terms as the court may prescribe.

TEX. R. APP. P. 25.1(g) (emphasis added). Because the six appellants did not seek leave to amend the April 30, 2019 notice of appeal until after their opening brief and appellees' brief were filed, they must obtain leave from this Court before any amendment can take place. *See id.*; *Nnaka v. Mejia*, No. 01-18-00779-CV, 2020 WL 425126, at *5 (Tex. App.—Houston [1st Dist.] Jan. 28, 2020, no pet.) (mem. op.). Michael and Law Office of Michael A. Pohl, PLLC have opposed the six appellants' requested amendment, and we decline to grant the six appellants leave to amend the April 30, 2019 notice of appeal.

This is not a case in which there has been a defect or omission in the original notice of appeal that can be corrected by amendment. *See Crofton*, 2003 WL 21297588, at *3 ("Although appellants' counsel has represented to this Court that Coy Wilson's name was 'inadvertently omitted or mistakenly omitted' from the original notice of appeal, we do not consider this omission a 'clerical defect'

40

susceptible to correction by amendment."); *cf. Sweed v. Nye*, 323 S.W.3d 873, 873–75 (Tex. 2010) (holding notice of appeal that did not have all information necessary for notice of restricted appeal still invoked appellate court's jurisdiction); *City of San Antonio v. Rodriguez*, 828 S.W.2d 417, 417–18 (Tex. 1992) (seeking to correct typographical errors made in original notice of appeal); *Galbraith v. Williams Cos.*, No. 01-15-01084-CV, 2017 WL 2872306, at *2 n.5 (Tex. App.—Houston [1st Dist.] July 6, 2017, pet. denied) (mem. op.) (appellant filed amended notice of appeal to correct typographical error that appeared in his original notice of appeal); *Taylor v. Margo*, 511 S.W.3d 117, 120 (Tex. App.—El Paso 2014, order) (allowing party to amend notice of appeal to include amended version of originally identified order); *Lefton v. Griffith*, 136 S.W.3d 271, 274 n.1 (Tex. App.—San Antonio 2004, no pet.) (motion for leave to amend notice of appeal granted to add certain information inadvertently omitted but required for notice of restricted appeal). In fact, the April 30, 2019 notice of appeal contains neither a defect nor an omission. It does exactly what it intends to do—it invokes this Court's jurisdiction over 266 appellants' challenge to the trial court's July 31, 2018, January 2, 2019, and April 15, 2019 orders. Amendment of the April 30, 2019 notice of appeal is not appropriate in this case. *See Thomas v. Thomas*, No. 14-02-01286-CV, 2003 WL 1088220, at *1–2 (Tex. App.—Houston [14th Dist.] Mar. 13, 2003, no pet.) (mem. op.) (where notice of appeal contained neither defect nor omission, rules allowing appellant to amend

notice of appeal did not apply); *see also* TEX. R. APP. P. 25.1(g) (Texas Rules of Appellate Procedure allow appellant to amend notice of appeal *to correct defect or omission*).

Given that amendment of the April 30, 2019 notice of appeal is not proper, the March 24, 2020 amended notice of appeal constitutes the first notice of appeal filed by the six appellants. *Cf. Crofton*, 2003 WL 21297588, at *3. Generally, a notice of appeal is due thirty days after the trial court's judgment is signed. TEX. R. APP. P. 26.1. The six appellants' notice of appeal was filed more than nine months after the trial court's June 3, 2019 summary-judgment order. *See Lehmann*, 39 S.W.3d at 200 ("[I]f a court has dismissed all of the claims in a case but one, an order determining the last claim is final."). As a result, it was untimely and cannot invoke this Court's jurisdiction to address the merits of the six appellants' appeal. *See Wagner & Brown, Ltd.*, 58 S.W.3d at 737–38; *Brashear*, 302 S.W.3d at 545–46 (timely filing of notice of appeal is jurisdictional prerequisite).

We deny the six appellants' motion for leave to amend the April 30, 2019 notice of appeal. *Cf. Cortez*, 2019 WL 961672, at *3 (declining to grant leave to file amended notice of appeal where party did not file original notice of appeal and did not seek to amend notice of appeal to add himself as appellant until two months after brief filed). We dismiss as moot the motion to strike the six appellants' amended notice of appeal filed by Michael and Law Office of Michael A. Pohl, PLLC. *See*

42

TEX. R. APP. P. 25.1(g) (after appellant's brief is filed, notice of appeal may be amended only after obtaining leave from appellate court).

## Summary Judgment

In their first issue, appellants[25] argue that the trial court erred in granting appellees summary judgment on their civil barratry claims because a four-year statute of limitations applies to civil barratry claims brought under Texas Government Code section 82.0651(a), appellants' civil barratry claims did not accrue when the improper solicitation occurred, and the trial court erred in not applying either the discovery rule or the *Hughes* and *McClung* tolling doctrines to appellants' civil barratry claims.

In their second issue, appellants argue that the trial court erred in granting appellees summary judgment on their civil conspiracy and aiding and abetting claims because these claims are derivative, they share a statute of limitations period with the underlying tort, and appellants' civil barratry claims are not time barred so neither are their civil conspiracy and aiding and abetting claims.[26]

---

[25] Because we have determined that we lack jurisdiction over the six appellants' attempted appeal, "appellants" in the remaining portions of the opinion, unless otherwise specified, refers to the remaining 266 appellants who timely filed a notice of appeal.

[26] The Texas Supreme Court has not expressly decided whether Texas recognizes a cause of action for aiding and abetting. *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224–25 (Tex. 2017); *Nguyen v. Watts*, 605 S.W.3d 761, 792 n.19 (Tex. App.—Houston [1st Dist.] 2020, pet. filed). Due to our disposition below, we need not address the propriety of alleging such a claim nor

In their third issue, appellants argue that the trial court erred in granting appellees summary judgment on their breach of fiduciary duty claims because a four-year statute of limitations applies to their breach of fiduciary duty claims, their breach of fiduciary duty claims did not fully accrue until July 31, 2018 when the trial court dismissed appellants' civil barratry claims, appellees failed to negate applying the discovery rule, and the trial court erred in not applying the *Hughes* and *McClung* tolling doctrines to appellants' breach of fiduciary duty claims. In their fourth issue, appellants argue that the trial court erred in granting appellees summary judgment on their breach of fiduciary duty claims because such claims do not require actual damages to obtain the equitable remedy of fee forfeiture and appellees failed to negate the availability of statutory civil penalties.

We review a trial court's decision to grant summary judgment de novo. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In conducting our review, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating*, 164 S.W.3d at 661; *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). If a trial court specifies the ground on which the

the parties' arguments on appeal as to whether or not such a cause of action exists under Texas law. *See* TEX. R. APP. P. 47.1; *Nguyen*, 605 S.W.3d at 792 n.19.

44

motion for summary judgment was granted, we should consider whether the trial court correctly granted summary judgment on that basis. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996); *Primo v. Garza*, No. 01-14-00480-CV, 2015 WL 777999, at *1 (Tex. App.—Houston [1st Dist.] Feb. 24, 2015, no pet.) (mem. op.). In the interest of judicial economy, we may also consider other grounds that the movant preserved for review and the trial court did not rule on. *See Cates*, 927 S.W.2d at 626; *Primo*, 2015 WL 777999, at *1. If the trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any of the asserted grounds are meritorious. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

To prevail on a summary-judgment motion, a movant has the burden of establishing that he is entitled to judgment as a matter of law and there is no genuine issue of material fact. TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When a defendant moves for summary judgment, he must either (1) disprove at least one essential element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of his affirmative defense, thereby defeating the plaintiff's cause of action. *Cathey*, 900 S.W.2d at 341; *Yazdchi v. Bank One, Tex., N.A.*, 177 S.W.3d 399, 404 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). Once the defendant meets his burden, the burden shifts

to the plaintiff, the non-movant, to raise a genuine issue of material fact precluding summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *Transcon. Ins. Co. v. Briggs Equip. Tr.*, 321 S.W.3d 685, 691 (Tex. App.—Houston [14th Dist.] 2010, no pet.). The evidence raises a genuine issue of fact if reasonable and fair-minded fact finders could differ in their conclusions in light of all the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

## A.    Civil Barratry

In their first issue, appellants argue that the trial court erred in granting appellees summary judgment on their civil barratry claims because a four-year statute of limitations applies to civil barratry claims brought under Texas Government Code section 82.0651(a), appellants' civil barratry claims did not accrue when the improper solicitation occurred, and the trial court erred in not applying either the discovery rule or the *Hughes* and *McClung* tolling doctrines to appellants' civil barratry claims.

"Barratry is the solicitation of employment to prosecute or defend a claim with intent to obtain a personal benefit." *State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 658 n.2 (Tex. 1994); *Nguyen v. Watts*, 605 S.W.3d 761, 773 (Tex. App.—Houston [1st Dist.] 2020, pet. filed); *see also Neese v. Lyon*, 479 S.W.3d 368, 376 (Tex. App.—Dallas 2015, no pet.) ("The ordinary meaning of barratry is vexatious

46

incitement to litigation, especially by soliciting potential legal clients." (citing *Barratry*, BLACK'S LAW DICTIONARY (10th ed. 2014))). Barratry is a criminal offense under Texas Penal Code section 38.12. *See* TEX. PENAL CODE ANN. § 38.12; *see also State v. Mays*, 967 S.W.2d 404, 408–09 (Tex. Crim. App. 1998) ("Barratry by solicitation has been criminalized in the State of Texas since 1901, when the [Texas] [P]enal [C]ode was amended to outlaw the fomenting of litigation by attorneys at law by soliciting employment." (internal quotations omitted)); *Neese*, 473 S.W.3d at 376 (noting barratry "has long been a crime in Texas").

Texas law also provides a private right of action for barratry for a client or a person solicited by conduct violating Texas Penal Code section 38.12(a) and (b)[27] or rule 7.03 of the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas,[28] regarding barratry by attorneys and other persons. *See* TEX. GOV'T CODE ANN. § 82.0651 (current version, as amended in 2013); *Sullo & Bobbit P.L.L.C. v. Abbott*, 536 Fed. Appx. 473, 474–76 (5th Cir. 2013) ("The civil barratry statute . . . provides that persons who are solicited by lawyers in a manner prohibited by law or ethics rules may file a civil action against the person who committed barratry . . . ."); *Neese*, 479 S.W.3d at 376 (noting criminal prohibition of barratry is

---

[27]     *See* TEX. PENAL CODE ANN. § 38.12(a), (b) ("Barratry and Solicitation of Professional Employment").

[28]     *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 7.03 ("Prohibited Solicitations and Payments").

found in Texas Penal Code Chapter 38 and Texas Disciplinary Rule of Professional Conduct 7.03 addresses barratry); *James v. Calkins*, 446 S.W.3d 135, 149 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) ("Section 82.0651 of the [Texas] Government Code provides for civil liability for prohibited barratry."); *see also* TEX. GOV'T CODE ANN. § 82.065(c).[29]  In 2011, the Texas Legislature enacted Texas Government Code section 82.0651, which contained the following relevant[30] provisions:

> (a)    A client may bring an action to void a contract for legal services that was procured as a result of conduct violating the laws of this [S]tate or the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas regarding barratry by attorneys or other persons.

---

[29]    In 1989, the Texas Legislature enacted Texas Government Code section 82.065 which, at the time, addressed contingency-fee agreements and barratry.  *See* Act of May 27, 1989, 71st Leg., R.S., ch. 866, § 3, sec. 82.065, 1989 Tex. Gen. Laws 3855, 3857 (amended 2011 and 2013) (current version at TEX. GOV'T CODE ANN. § 82.065); *see also Gauthia v. Arnold & Itkin, L.L.P.*, No. 01-19-00143-CV, 2020 WL 5552458, at *2 & nn.4–5 (Tex. App.—Houston [1st Dist.] Sept. 17, 2020, no pet.) (mem. op.).  Before section 82.065's enactment, Texas law did not recognize any private right of action for barratry for a client who had been improperly solicited.  *See Neese v. Lyon*, 479 S.W.3d 368, 378–82 (Tex. App.—Dallas 2015, no pet.); *see also Nguyen*, 605 S.W.3d at 774–75.  After section 82.065 was amended, it was not limited to the commission of barratry in the context of contingency-fee agreements.  The current version of section 82.065 addresses barratry and "[a]ny contract for legal services."  TEX. GOV'T CODE ANN. § 82.065(b); *see also Holliday v. Gray*, No. 05-18-01146-CV, 2020 WL 1969503, at *6 n.2 (Tex. App.—Dallas Apr. 24, 2020, pet. denied) (mem. op.) (noting original version of section 82.065 provided private right of action related only to contingency-fee agreements, but current version applies to any contract for legal services).

[30]    As previously noted, appellants, in their briefing, state that their civil barratry claims are brought under the original version of Texas Government Code section 82.0651(a), as enacted in 2011.  *See, e.g.*, *Neese*, 479 S.W.3d at 377 n.3 (noting 2013 amendments to section 82.0651 did not apply to case).

(b) A client who prevails in an action under [s]ubsection (a) shall recover from any person who committed barratry:

(1) all fees and expenses paid to that person under the contract;

(2) the balance of any fees and expenses paid to any other person under the contract, after deducting fees and expenses awarded based on a quantum meruit theory as provided by [Texas Government Code] [s]ection 82.065(c);

(3) actual damages caused by the prohibited conduct; and

(4) reasonable and necessary attorney's fees.

. . . .

(e) This section shall be liberally construed and applied to promote its underlying purposes, which are to protect those in need of legal services against unethical, unlawful solicitation and to provide efficient and economical procedures to secure that protection.

Act of May 5, 2011, 82d Leg., R.S., ch. 94, § 2, sec. 82.0651(a), (b), (e), 2011 Tex. Gen. Laws 534, 535 (amended 2013) (current version at TEX. GOV'T CODE ANN. § 82.0651); *see also Neese*, 479 S.W.3d at 377, 382–83, 385 (noting section 82.0651, as written above, applied to conduct that occurred from September 1, 2011 to August 31, 2013 and explaining Texas Legislature amended section 82.0651 in 2013).[31]

---

[31] In 2013, the Texas Legislature amended the original version of Texas Government Code section 82.0651, including sections (a) and (b), which now provide:

(a) A client may bring an action to void a contract for legal services that was procured as a result of conduct violating [s]ection 38.12(a) or (b), Penal Code, or [r]ule 7.03 of the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas, regarding

Thus, under Texas Government Code section 82.0651(a) and (b), clients, such as appellants, may bring an action to void a contract for legal services that was procured as a result of conduct that violated the laws of the State of Texas or the Texas Disciplinary Rules of Professional Conduct regarding barratry, and, should those clients prevail, they are entitled to recover all fees and expenses paid under the barratrous contract to the person who committed barratry, plus other remedies such as actual damages caused by the barratry and attorney's fees incurred in the prosecution of a barratry action. *See* Act of May 5, 2011, 82d Leg., R.S., ch. 94, § 2,

---

barratry by attorneys or other persons, and to recover any amount that may be awarded under [s]ubsection (b). A client who enters into a contract described by this subsection may bring an action to recover any amount that may be awarded under [s]ubsection (b) even if the contract is voided voluntarily.

    (b)    A client who prevails in an action under [s]ubsection (a) shall recover from any person who committed barratry:

    (1)    all fees and expenses paid to that person under the contract;

    (2)    the balance of any fees and expenses paid to any other person under the contract, after deducting fees and expenses awarded based on a quantum meruit theory as provided by [Texas Government Code] [s]ection 82.065(c);

    (3)    actual damages caused by the prohibited conduct;

    (4)    a penalty in the amount of $10,000; and

    (5)    reasonable and necessary attorney's fees.

Act of May 15, 2013, 83d Leg., ch. 315, § 2, 2013 Tex. Gen. Laws 1073, 1074 (current version TEX. GOV'T CODE ANN. § 82.0651(a), (b)).

sec. 82.0651(a), (b), 2011 Tex. Gen. Laws 534, 535 (amended 2013); *Neese*, 479 S.W.3d at 382–83, 385.

### 1. *Statute of Limitations and Accrual*

On June 8, 2017, Dezzie Brumfield filed suit against appellees, alleging a claim for civil barratry under the original version of Texas Government Code section 82.0651(a). On July 26, 2017, appellants filed their first amended petition, adding the other appellants to the suit and continuing to allege civil barratry claims against appellees under section 82.0651(a).

The trial court granted appellees summary judgment on appellants' civil barratry claims without specifying the grounds. *See Beverick*, 186 S.W.3d at 148 (if trial court grants summary judgment without specifying grounds, we must uphold judgment if any of asserted grounds are meritorious). Thus, appellants must show that none of the proposed summary-judgment grounds support the trial court's ruling. *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 79 (Tex. 1989); *see also Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004) (appellate court will affirm summary-judgment ruling if any of theories presented to trial court and preserved for appellate review are meritorious).

It is an affirmative defense that a statute of limitations bars a claim. TEX. R. CIV. P. 94. Appellants and appellees disagree as to whether a two-year statute of limitations or a four-year statute of limitations applies to appellants' civil barratry

51

claims brought under the original version of Texas Government Code section 82.0651(a).

As we have recognized, Texas Government Code section 82.0651 does not have an express statute of limitations period to be applied to a civil barratry claim. *See Nguyen*, 605 S.W.3d at 780; *see also* Act of May 5, 2011, 82d Leg., R.S., ch. 94, § 2, sec. 82.0651, 2011 Tex. Gen. Laws 534, 535 (amended 2013); *In re Rosenthal & Watson, P.C.*, 612 B.R. 507, 563 (Bankr. W.D. Tex. 2020) ("There is no specific statute of limitations for bringing a civil barratry claim in Texas."). Yet we have held that a two-year statute of limitations applies to civil barratry claims brought under either the current version of section 82.0651(c) or the original version of section 82.0651(c), as enacted in 2011. *See Nguyen*, 605 S.W.3d at 780–81 (explaining whether Court applied "the 2011 or [the] 2013 version" of section 82.0651(c), "the outcome or analysis of th[e] case" was unchanged); *see also* TEX. CIV. PRAC. & REM. CODE § 16.003(a) ("Two-Year Limitations Period"); *Williams v. Khalaf*, 802 S.W.2d 651, 654 (Tex. 1990) (holding for tort not expressly governed by statute of limitations, we presume tort is "a trespass" that is covered by two-year statute of limitations of section 16.003(a) (internal quotations omitted)). This may indicate that a two-year statute of limitations should apply to all civil barratry claims brought under the original version of Texas Government Code section 82.0651, including a claim under the original version of section 82.0651(a). *See Jaster v.*

*Comet II Constr., Inc.*, 382 S.W.3d 554, 561 (Tex. App.—Austin 2012) (cautioning against statutory interpretation that would require courts to parse nature of undeveloped claims with potentially case-dispositive results), *aff'd*, 438 S.W.3d 556 (Tex. 2014). But this Court was not asked to determine in *Nguyen* whether a two-year or four-year statute of limitations applied to a civil barratry claim brought under either the current version or the original version of Texas Government Code section 82.0651(a).

We note that our sister appellate court has held that a four-year statute of limitations applies to civil barratry claims brought under the original version of Texas Government Code section 82.065(b).[32] *See Neese*, 479 S.W.3d at 383–84. And we have agreed, following *Neese*, that civil barratry claims brought under the original version of Texas Government Code section 82.065(b) are governed by a four-year statute of limitations. *See Gauthia v. Arnold & Itkin, L.L.P.*, No. 01-19-00143-CV, 2020 WL 5552458, at *7 (Tex. App.—Houston [1st Dist.] Sept. 17, 2020, no pet.) (mem. op.). Thus, this could signify that a four-year statute of limitations should apply to civil barratry claims brought under the original version

---

[32] The original version of Texas Government Code section 82.065(b), enacted in 1989, provided: "A contingent fee contract for legal services is voidable by the client if it is procured as a result of conduct violating the laws of this [S]tate or the Disciplinary Rules of the State Bar of Texas regarding barratry by attorneys or other persons." *See* Act of May 27, 1989, 71st Leg., R.S., ch. 866, § 3, sec. 82.065(b), 1989 Tex. Gen. Laws 3855, 3857 (amended 2011 and 2013).

Texas Government Code section 82.0651(a) because both section 82.065(b) and section 82.0651(a) address barratry claims filed by a client when an attorney-client contract has been signed. *See, e.g.*, *In re Rosenthal & Watson, P.C.*, 612 B.R. at 563 (relying on *Neese* in applying four-year statute of limitations to civil barratry claim under Texas law). And after section 82.065(b) was amended by the Texas Legislature in 2011 to remove its application to only contingency-fee contracts, the 2011 amended provision is much like the original version of Texas Government Code section 82.0651(a) that is at issue in this case. *Compare* Act of May 5, 2011, 82d Leg., R.S., ch. 94, § 2, sec. 82.0651(a), 2011 Tex. Gen. Laws 534, 535 (amended 2013) ("A client may bring an action to void a contract for legal services that was procured as a result of conduct violating the laws of this [S]tate or the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas regarding barratry by attorneys or other persons."), *with* Act of May 5, 2011, 82d Leg., R.S., ch. 94, § 1, sec. 82.065(b), 2011 Tex. Gen. Laws 534, 534 (amended 2013) (current version at TEX. GOV'T CODE ANN. § 82.065) ("Any contract for legal services is voidable by the client if it is procured as a result of conduct violating the laws of this [S]tate or the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas regarding barratry by attorneys or other persons.").

Here, we need not determine whether a two-year or four-year statute of limitations applies to a civil barratry claim brought under the original version of

54

Texas Government Code section 82.0651(a), as enacted in 2011, because appellees assert, as they did in the trial court, that even if a four-year statute of limitations applies to appellants' civil barratry claims those claims are still time barred.

Appellees, as the parties asserting the affirmative defense of statute of limitations and as the movants for summary judgment, bore the burden of establishing as a matter of law that appellants' civil barratry claims were time barred. *See KPMG Peat Marwick v. Harrison Cty. Houston Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999); *Richardson v. Allstate Tex. Lloyd's*, 235 S.W.3d 863, 865 (Tex. App.—Dallas 2007, no pet.). To do so, appellees must have (1) conclusively proven when the cause of action accrued and (2) negated the discovery rule if it applied and had been pleaded or otherwise raised. *KPMG Peat Marwick*, 988 S.W.2d at 748; *see also Nguyen*, 605 S.W.3d at 782. If appellees established that the statute of limitations barred appellants' civil barratry claims, appellants were required to adduce summary-judgment proof raising a fact issue in avoidance of the statute of limitations. *See KPMG Peat Marwick*, 988 S.W.2d at 748.

A cause of action accrues and the statute of limitations begins to run when (1) the allegedly wrongful act was committed and caused an injury or (2) when the facts come into existence that authorize a party to seek a judicial remedy. *United Healthcare Servs., Inc. v. First St. Hosp. LP*, 570 S.W.3d 323, 335 (Tex. App.— Houston [1st Dist.] 2018, pet. denied); *see also Gauthia*, 2020 WL 5552458, at *6.

55

This is true even if all resulting damages have not yet occurred. *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018); *see also Gauthia*, 2020 WL 5552458, at *6. Determining the accrual date is a question of law. *Knott*, 128 S.W.3d at 221; *see also Gauthia*, 2020 WL 5552458, at *6.

Since its 2011 enactment, the purpose of the Texas Government Code section 82.0651 has been "to protect those in need of legal services against unethical, unlawful solicitation and to provide efficient and economical procedures to secure that protection." Act of May 5, 2011, 82d Leg., R.S., ch. 94, § 2, sec. 82.0651(e), 2011 Tex. Gen. Laws 534, 535 (amended 2013); *see also Nguyen*, 605 S.W.3d at 782. Consistent with this purpose, a person, including a client, has the right to be free from solicitation that violates the laws of the State of Texas or the Texas Disciplinary Rules of Professional Conduct regarding barratry. *See Nguyen*, 605 S.W.3d at 782–83; *see also* Act of May 5, 2011, 82d Leg., R.S., ch. 94, § 2, sec. 82.0651, 2011 Tex. Gen. Laws 534, 535 (amended 2013). It also necessarily follows that a plaintiff suffers a "legal injury" under Texas Government Code section 82.0651(a) when he is solicited through improper conduct that violates the laws of the State of Texas or the Texas Disciplinary Rules of Professional Conduct regarding barratry. *See Nguyen*, 605 S.W.3d at 782–83 (internal quotations omitted); *see also Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997) (defining "legal injury" as "an injury giving cause of action by reason of its being an invasion of a plaintiff's

56

right" (internal quotations omitted)); *Gauthia*, 2020 WL 5552458, at \*6–7 (civil barratry claim accrued when defendants allegedly solicited plaintiffs to retain defendants to represent them).

Here, appellants alleged that appellees improperly solicited appellants and procured a contract for legal services as a result. Appellants must show improper solicitation to prevail on their civil barratry claims. *See Tex. Law Shield LLP v. Crowley*, 513 S.W.3d 582, 586, 589 & n.6, 590 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (explaining solicitation is relevant for claims brought under Texas Government Code section 82.0651(a) by a client, and based on allegations in petition, section 82.0651(a) "require[d] proof that each contract was obtained as a result of a paid solicitation"); *see also Neese*, 479 S.W.3d at 385 (holding civil barratry claim "requires a client to prove more than that the defendant violated the laws or disciplinary rules regarding barratry"). Thus, we look to the date or dates of the alleged improper solicitation to determine when appellants' civil barratry claims accrued. *See Gauthia*, 2020 WL 5552458, at \*7 ("Solicitation occurs at the moment the purported case runner communicates in person with a prospective client about legal representation for an existing legal problem.").

Appellees did not present summary-judgment evidence showing the exact date on which each individual appellant was improperly solicited. But appellants alleged in their petition that each appellant was improperly solicited with the primary

purpose of obtaining business and employment for Michael, Jimmy, and Cyndi, and this solicitation occurred before any appellants signed a contract. *See Tex. Dep't of Corrections v. Herring*, 513 S.W.2d 6, 9 (Tex. 1974); *Martz v. Weyerhaeuser Co.*, 965 S.W.2d 584, 588 (Tex. App.—Eastland 1998, no writ). Appellees, with their partial-summary-judgment motion, did include evidence establishing the date on which each appellant signed a representation agreement or an attorney-client contract related to appellants' claims against BP for the Deepwater Horizon oil spill. And that evidence shows that May 2013 was the last time that any appellant signed a representation agreement or an attorney-client contract related to his claim against BP.[33] This means that the complained-of improper solicitation of appellants by appellees had to have occurred on or before the date each appellant signed his

---

[33] In their opening brief, appellants argue that the trial court erred in granting appellees summary judgment on appellants' breach of fiduciary duty claims because the affidavit of Cyndi, which was attached to appellees' partial-summary-judgment motion on appellants' breach of fiduciary duty claims, was conclusory, lacked foundation, and was insufficient to constitute summary judgment evidence. But this argument does not apply to the summary-judgment evidence that accompanied appellees' motion for partial summary judgment on appellants' civil barratry, civil conspiracy, and aiding and abetting claims, which appellants did not challenge in their briefing. Here, appellants do not argue that the trial court erred in granting appellees summary judgment on appellants' civil barratry, civil conspiracy, or aiding and abetting claims because the evidence attached to appellees' motion was conclusory, lacked foundation, or was insufficient to constitute summary judgment evidence. *See* TEX. R. APP. P. 38.1(f), (i); *see also Gonzales v. Thorndale Coop. Gin & Grain Co.*, 578 S.W.3d 655, 657 (Tex. App.—Houston [14th Dist.] 2019, no pet.) ("As the appellant, [he] bore the responsibility to frame the issues and arguments for his appeal; and we have no discretion to create an issue or argument not raised in the appellant's brief.").

representation agreement or attorney-client contract—the latest being in May 2013. *See Gauthia*, 2020 WL 5552458, at *6–7 (civil barratry claim accrued when defendants allegedly solicited plaintiffs to retain defendants to represent them); *Nguyen*, 605 S.W.3d at 782–83. Thus, appellees, on summary judgment, established that appellants' civil barratry claims had to have accrued on or before May 2013. *See Gauthia*, 2020 WL 5552458, at *6–7; *Nguyen*, 605 S.W.3d at 782–83.

As noted, Brumfield filed suit against appellees on June 8, 2017, alleging a claim for civil barratry. On July 26, 2017, appellants filed their first amended petition adding the other appellants to the suit, who also alleged civil barratry claims against appellees. No matter whether a two-year or four-year statute of limitations applies to appellants' civil barratry claims brought under the original version of Texas Government Code section 82.0651(a), we conclude that appellees proved as a matter of law that more than four years had passed since appellants' claims accrued. Still, because appellants pleaded that the discovery rule applied to their civil barratry claims, we now consider whether appellees also conclusively negated applying the discovery rule to appellants' claims.

### 2. *Discovery Rule*

The discovery rule is a limited exception to the statute of limitations. *Comput. Assocs. Int'l Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455, 457 (Tex. 1996). The discovery rule defers accrual of a cause of action until the plaintiff knew or, exercising

reasonable diligence, should have known of the facts giving rise to the cause of action. *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998); *see also ExxonMobil Corp. v. Lazy R Ranch, LP*, 511 S.W.3d 538, 542–43 (Tex. 2017) ("[A] claim accrues when injury occurs, not afterward when the full extent of the injury is known."). A plaintiff need not know that he has a cause of action. Instead, he must only know "the facts giving rise to the cause of action." *Altai, Inc.*, 918 S.W.2d at 455. The discovery rule applies in limited circumstances where "the nature of the injury incurred is inherently undiscoverable and the evidence of the injury is objectively verifiable." *Id.* at 456.

"An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex. 1996). An injury is objectively verifiable when the facts on which liability is predicated can be proven by "direct, physical evidence." *Id.* The term "legal injury" is defined as "an injury giving cause of action by reason of its being an invasion of a plaintiff's right." *Murphy*, 964 S.W.2d at 270 (internal quotations omitted).

Appellants argue that the discovery rule applies to their civil barratry claims brought under the original Texas Government Code section 82.0651(a) because barratry is inherently undiscoverable and evidence of such claims is objectively verifiable. Appellants assert that "a lay victim certainly is unlikely to discover the

60

barratry within the limitations period" and "the discovery rule should be applied categorically to civil barratry claims, just as it has been categorically applied to legal[-]malpractice claims."

In response, appellees argue, as they did in the trial court, that the discovery rule does not apply to appellants' civil barratry claims because appellants' "injury"—the alleged improper solicitation—was not inherently undiscoverable as "a person always knows when he receives an unsolicited phone call or in-person visit," "the discovery rule does not toll limitations until the [plaintiff] knows that the defendant's conduct was wrongful," and appellants never asserted that they were unaware of the alleged improper solicitations in this case. Appellees also assert that appellants cannot rely on the application of the discovery rule in legal-malpractice cases.

This Court recently addressed the discovery rule in the context of civil barratry claims in two cases, *Nguyen* and *Gauthia*. In *Nguyen*, the plaintiffs pleaded that the discovery rule tolled the accrual of the statute of limitations on their civil barratry claims brought under Texas Government Code section 82.0651(c). 605 S.W.3d at 770–71, 781–82. When the defendants then moved for summary judgment on the plaintiffs' civil barratry claims, asserting that the claims were barred by the statute of limitations, the trial court granted the defendants summary judgment, concluding

that the discovery rule did not toll the statute of limitations for the claims that were based on improper solicitation. *Id.* at 771–72, 779–80, 782.

On appeal, this Court considered whether the discovery rule applied to the plaintiffs' civil barratry claims brought under Texas Government Code section 82.0651(c). *Id.* at 781–84. In doing so, we noted that the Texas Supreme Court has "restricted the discovery rule to exceptional cases to avoid defeating the purposes behind" a statute of limitations. *Id.* at 782 (quoting *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006)); *see also S.V.*, 933 S.W.2d at 6, 24 (application of discovery rule "should be few and narrowly drawn"; statute of limitations has benefit of precluding stale or spurious claims). We then sought to determine whether the legal injury suffered by the plaintiffs under section 82.0651(c) was inherently undiscoverable, recognizing that the legal question of whether an injury is inherently undiscoverable "is decided on a categorical rather than case-specific basis; the focus is on whether a type of injury rather than a particular injury was discoverable." *Nguyen*, 605 S.W.3d at 782–83 (emphasis omitted).

As in this case, we determined in *Nguyen* that the legal injury suffered by a plaintiff under Texas Government Code section 82.0651(c) occurs when he is improperly solicited in violation of Texas Penal Code section 38.12 or rule 7.03 of the Texas Disciplinary Rules of Professional Conduct. *Id.* And the plaintiffs in *Nguyen* knew they had been improperly solicited at the time the solicitation

occurred. *Id.* at 783. An injury cannot be inherently undiscoverable when a plaintiff knows enough facts to file suit but fails to do so only because he does not know the law. *Id.* Based on the nature of the civil barratry claim, a plaintiff knows about the facts giving rise to his claim under section 82.0651(c) at the time that they occur; that is, he knows about the solicitous conduct that the statute makes actionable. *Id.* We acknowledged the plaintiffs' argument that a plaintiff who receives a prohibited solicitation cannot discover his legal injury because he will not know that the solicitation violated the law, but we disagreed that the accrual of a barratry claim should be deferred until the plaintiff learns that the law prohibited an attorney's conduct. *See id.* at 783–84.

In concluding that the discovery rule did not toll the statute of limitations of the plaintiffs' civil barratry claims because a claim under Texas Government Code section 82.0651(c) does not involve the type of injury that is inherently undiscoverable, we rejected the plaintiffs' reliance on legal-malpractice cases to support their assertion that the discovery rule should be applied to civil barratry claims. *See id.* Ultimately, we held that "[i]t is the plaintiff's knowledge of the conduct constituting a prohibited solicitation, and not his knowledge of the law, that triggers the accrual of the [civil barratry] claim." *Id.* at 784. Thus, a plaintiff's civil barratry claim under section 82.0651(c) "accrues when he is solicited by the conduct

prohibited in th[e] provision," and the discovery rule does not toll the applicable statute of limitations. *Id.*

More recently, in *Gauthia*, this Court addressed whether the discovery rule applied to the plaintiffs' civil barratry claims brought under the original version Texas Government Code section 82.065(b), which allowed a client who hired an attorney as a result of barratry to sue for rescission of an unlawful contingency-fee contract. 2020 WL 5552458, at *2, *5–8. In that case, the plaintiffs pleaded that the discovery rule applied to their civil barratry claims brought under Texas Government Code section 82.065 and tolled the statute of limitations. *Id.* at *2. The defendants moved for summary judgment on the plaintiffs' civil barratry claims, asserting that the statute of limitations barred the claims, and although the plaintiffs argued in their summary-judgment response that "the discovery rule precluded summary judgment based on the statute of limitations," the trial court disagreed and granted the defendants summary judgment. *Id.* at *3–4.

On appeal, this Court sought to determine whether the discovery rule tolled the statute of limitations accrual date for the plaintiffs' civil barratry claims brought under the original version of Texas Government Code section 82.065(b). *Id.* at *6–8. The plaintiffs argued that the discovery rule applied to their civil barratry claims because the nature of their legal injuries was inherently undiscoverable; "they could not have discovered their legal injuries because they did not know that the prohibited

solicitation violated the law." *Id.* at *7. The plaintiffs relied on legal-malpractice cases and asserted that their civil barratry claims under section 82.065(b) were analogous to legal-malpractice claims, which the Texas Supreme Court has determined are inherently undiscoverable. *Id.*

We determined that the plaintiffs' reliance on legal-malpractice cases was erroneous because unlike a legal-malpractice claim the plaintiffs did not need knowledge of the law to perceive their claims—to discover that the defendants had solicited them. *Id.* As we explained, the plaintiffs "did not need to know they could sue [the defendants]; rather, they only needed to know the facts giving rise to their claims." *Id.* at *8. The plaintiffs' legal injuries were not inherently undiscoverable because they were aware of the facts giving rise to their claims based on the improper solicitation when the solicitation occurred. *Id.* Thus, we held that the discovery rule did not toll the statute of limitations for the plaintiffs' civil barratry claims brought under the original version of Texas Government Code section 82.065(b) because the claims based on the solicitous conduct did not involve the type of injury that was inherently undiscoverable. *Id.* "It is the plaintiff[s'] knowledge of the conduct constituting a prohibited solicitation, and not [their] knowledge of the law, that triggers accrual of the claim." *Id.* (internal quotations omitted).

Here, we see no reason to stray from our previous decisions about civil barratry claims and the discovery rule. Appellants, in their petition, alleged how

each individual appellant was solicited—either by telephone or in person. For instance, as to Brumfield, the petition states:

> Brumfield was a truck driver doing business as LAD Enterprises. At the time, Brumfield was trucking with a company called Velocity Express, LLC. Sometime in 2012, Brumfield received an unsolicited phone call on his cellular phone from a runner believed to have been working for CMV [Investigations] named Geraldine out of Natchez, Mississippi. Geraldine told Brumfield that he was "guaranteed" $50,000 if he hired [Jimmy], [Cyndi,] and [Michael] to file a claim against BP. Geraldine provided Brumfield with the lawyers' phone number and urged him to call them. Just like Taylor was trained to do, Geraldine touted [Jimmy's] ability so as to induce Brumfield to contact the lawyers.

> Based on this solicitation, Brumfield called Williamson & Rusnak and provided his information to Samantha Cecil ("Cecil"), an employee of the law firm. Cecil sent paperwork to Brumfield to complete regarding his claim. It is believed that Brumfield . . . sent the completed paperwork back to Williamson & Rusnak. Between 2012 and 2015, Brumfield continued to provide Williamson & Rusnak with all the information necessary to support his BP economic loss claim, incurring approximately $1,200 in expenses because of the solicitation.

Appellants' legal injuries were not inherently undiscoverable because appellants were aware of the facts giving rise to their claims based on improper solicitation at the time the solicitations occurred. *See id.* at *7–8; *Nguyen*, 605 S.W.3d at 782–84. In other words, appellants knew about the solicitations at the time that they were occurring, and they knew about the solicitous conduct that makes Texas Government Code section 82.0651 actionable. *See Nguyen*, 605 S.W.3d at 782–84. "It is the plaintiff[s'] knowledge of the conduct constituting a prohibited solicitation, and not

[their] knowledge of the law" that is important. *Gauthia*, 2020 WL 5552458, at *8 (internal quotations omitted).

Although appellees did not present summary-judgment evidence showing the exact date on which each appellant was improperly solicited, they did establish the date on which each appellant signed a representation agreement or an attorney-client contract related to their claims against BP for the Deepwater Horizon oil spill. And the summary-judgment evidence attached to appellees' partial-summary-judgment motion shows that May 2013 was the last time that any appellant signed a representation agreement or an attorney-client contract for his claim against BP. This means that the complained-of improper solicitation of appellants by appellees had to have occurred on or before the date each appellant signed his representation agreement or attorney-client contract—the latest being in May 2013. And appellants' legal injuries were not inherently undiscoverable because appellants were aware of the facts giving rise to their claims based on improper solicitation before May 2013. *See Gauthia*, 2020 WL 5552458, at *8. We conclude that appellees established as a matter of law that the discovery rule did not toll the statute of limitations for appellants' civil barratry claims.[34] *See id.*

---

[34] Although appellants, in their briefing, seek to analogize legal-malpractice claims to civil-barratry claims brought under the original version of Texas Government Code section 82.0651(a) to assert that the discovery rule should apply to the toll the statute of limitations in this case, appellants' reliance on legal-malpractice cases is misplaced, particularly because any alleged improper solicitation would have

### 3. *Hughes and McClung Tolling Doctrines*

Appellants next assert that the *Hughes* and *McClung* tolling doctrines should have been applied to their civil barratry claims brought under the original version of Texas Government Code section 82.0651(a) and when they are applied, summary judgment on appellants' civil barratry claims is improper.

In *Hughes v. Mahaney & Higgins*, the Texas Supreme Court considered the proper application of the statute of limitations in a legal-malpractice case when the attorney allegedly committed malpractice while providing legal services in the prosecution or defense of a claim that had resulted in litigation. 821 S.W.2d 154, 155–57 (Tex. 1991). There, the plaintiffs hired an attorney who filed suit on their behalf. *Id.* at 155. But while representing the plaintiffs in their underlying suit, the attorney allegedly committed legal malpractice. *Id.* at 155–56. After the appeals in their underlying suit were exhausted, the plaintiffs filed a legal-malpractice claim against their attorney based on errors made by the attorney in the plaintiffs' underlying suit. *Id.* at 156. The attorney moved for summary judgment asserting that the two-year statute of limitations barred the plaintiffs' legal-malpractice claim against him. *Id.*

occurred before the formation of the attorney-client relationship in this case. *See generally Gauthia*, 2020 WL 5552458, at *7–8 (determining legal-malpractice cases not applicable to analysis of discovery rule and civil-barratry claims).

68

The Supreme Court held that the statute of limitations for the plaintiffs' legal-malpractice claim was tolled until the appeals in the plaintiffs' underlying suit were exhausted. *Id.* at 155–57. As the court explained: "[W]hen an attorney commits malpractice while providing legal services in the prosecution or defense of a claim which results in litigation, the legal injury and discovery rules can force the client into adopting inherently inconsistent litigation postures in the underlying case and in the malpractice case." *Id.* at 156. Thus, "[l]imitations are tolled for the second cause of action [against the attorney] because the viability of the second cause of action depends on the outcome of the first [in the underlying suit]." *Id.* at 157. In essence, in *Hughes*, the court established a special tolling rule applicable to a precise set of circumstances: "[W]hen an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations on the malpractice claim against the attorney is tolled until all appeals on the underlying claim are exhausted." *Id.*

Appellants' civil barratry claims do not present the untenability conflict that the Texas Supreme Court recognized in *Hughes*. The reason for tolling the statute of limitations in a *Hughes*-type legal-malpractice case is to prevent a client from having to argue in his underlying lawsuit that his attorney did not err or that the attorney's error did not impact the outcome of the lawsuit, while arguing at the same time in his legal-malpractice suit that his attorney did err and the error harmed his

69

underlying suit.[35] *See id.* at 155–57; *see also Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 121 (Tex. 2001) (without tolling of statute of limitations in legal-malpractice cases when attorney commits malpractice in prosecution or defense of claim that results in litigation, "the legal-injury rule and the discovery rule [could] force a client into the untenable position of having to adopt inherently inconsistent litigation postures in the underlying case and the malpractice case").

Appellants' civil barratry claims are based on improper solicitation of appellants by appellees before an attorney-client contract was ever signed by appellants. Thus, the solicitation—the improper conduct that creates appellants' claims—is not malpractice that is committed in the prosecution or defense of a claim. *See Erikson v. Renda*, 590 S.W.3d 557, 566–68 (Tex. 2019). And, as a result, the policy reasons that justify suspending the statute of limitations until the completion of litigation in a *Hughes*-type legal-malpractice case do not apply here.

The Texas Supreme Court has confirmed that the tolling doctrine set out in *Hughes* only applies to certain legal-malpractice cases involving attorney malpractice in the prosecution or defense of a claim that results in litigation. *See id.* at 559 ("*Hughes* tolling is animated by several policy considerations unique to

---

[35]     To prove a legal-malpractice claim, the plaintiff must establish that: (1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) damages occurred. *Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.*, 192 S.W.3d 780, 783 (Tex. 2006).

70

malpractice claims, but it is a 'clear and strict,' 'categorical,' and 'bright-line rule' applicable only to the category of legal-malpractice claims falling within the articulated paradigm."); *Apex Towing*, 41 S.W.3d at 122 (noting "strict application of the *Hughes* tolling rule" needed and courts should apply *Hughes* tolling rule "to the category of legal-malpractice cases encompassed within its definition"); *Murphy*, 964 S.W.2d at 272; *see also Bloom v. Aftermath Pub. Adjusters, Inc.*, 902 F.3d 516, 518 (5th Cir. 2018) (rule in *Hughes* does not "sweep broadly" and has been limited by Texas Supreme Court); *Vacek Grp., Inc. v. Clark*, 95 S.W.3d 439, 442–47 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (noting strict application of *Hughes* tolling rule and holding it did not apply to legal-malpractice claim based on errors committed by attorneys in course of conducting transactional work); *Hoover v. Gregory*, 835 S.W.2d 668, 672 (Tex. App.—Dallas 1992, writ denied) ("[W]e interpret *Hughes* narrowly and decide that its application should be limited to cases involving legal malpractice." (emphasis omitted)).

For these reasons, we decline to extend the *Hughes* tolling doctrine by applying it to appellants' civil barratry claims brought under the original version of Texas Government Code section 82.0651(a).

Appellants also assert that the *McClung* tolling doctrine should be applied to their civil barratry claims. In *McClung v. Johnson*, the Dallas Court of Appeals, in a legal-malpractice case, held that "a cause of action for legal malpractice accrues

71

when the act or default occurs and damages are ascertainable; but that . . . the statute [of limitations] is tolled" for as long as the attorney-client relationship exists. 620 S.W.2d 644, 645–47 (Tex. App.—Dallas 1981, writ ref'd n.r.e.). This tolling doctrine is no longer good law in the context of legal-malpractice cases. *See Willis v. Maverick*, 760 S.W.2d 642, 645 n.2 (Tex. 1988); *McCraine v. Chamberlain, Hrdlicka, White, Williams & Martin, P.C.*, No. 14-04-00793-CV, 2006 WL 278276, at *5 (Tex. App.—Houston [14th Dist.] Feb. 7, 2006, pet. denied) (mem. op.); *Estate of Degley v. Vega*, 797 S.W.2d 299, 303 n.3 (Tex. App.—Corpus Christi–Edinburg 1990, no writ) (noting Texas Supreme Court expressly disapproved of *McClung*'s approach to tolling).[36]

We decline to apply the *McClung* tolling doctrine to appellants' civil barratry claims brought under the original version of Texas Government Code section 82.0651(a).

---

[36] We note that appellants, when discussing the *McClung* tolling doctrine and its alleged application to their breach of fiduciary duty claims in their opening brief, refer this Court to our previous opinion in *Vacek Group, Inc. v. Clark* to assert that Texas courts have not disapproved of the tolling doctrine in *McClung*. 95 S.W.3d 439, 442 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (legal-malpractice case). However, in *Vacek Group*, this Court did not approve of the *McClung* tolling doctrine, nor did we apply it in that case; we simply mentioned appellant's reliance on the doctrine in connection with his argument that the statute of limitations was tolled for his legal-malpractice claims. *See id. Vacek Group* does not support appellants' assertion that the *McClung* tolling doctrine should be applied to appellants' civil barratry claims.

In sum, appellees conclusively proved that appellants' civil barratry claims brought under the original version of Texas Government Code section 82.0651(a) accrued more than four years before appellants filed suit and appellees established that neither the discovery rule, the *Hughes* tolling doctrine, nor the *McClung* tolling doctrine applied to appellants' claims. We thus hold that the trial court did not err granting appellees summary judgment on appellants' civil barratry claims.

We overrule appellants' first issue.

## B.    Conspiracy and Aiding and Abetting

In their second issue, appellants argue that the trial court erred in granting appellees summary judgment on their civil conspiracy and aiding and abetting claims because these claims are derivative, they share a statute of limitations period with the underlying tort, and appellants' civil barratry claims are not time barred so neither are their civil conspiracy and aiding and abetting claims.

"[Civil] [c]onspiracy is a derivative tort because 'a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable.'" *W. Fork Advisors, LLC v. SunGard Consulting Servs., LLC*, 437 S.W.3d 917, 920 (Tex. App.—Dallas 2014, pet. denied) (quoting *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996)); *see also Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 138, 140–45, 148 (Tex. 2019) (recognizing conspiracy as theory of derivative liability, not independent tort);

73

*Spencer & Assocs., P.C. v. Harper*, 612 S.W.3d 338, 354 (Tex. App.—Houston [1st Dist.] 2019, no pet.). Because there "can be no independent liability for civil conspiracy," a plaintiff does not have a viable conspiracy claim if the trial court correctly grants summary judgment on the underlying tort. *Spencer & Assocs.*, 612 S.W.3d at 354 (internal quotations omitted); *see also Nguyen*, 605 S.W.3d at 792–93. And because it is a derivative claim, civil conspiracy takes the statute of limitations period of the underlying tort that is the object of the conspiracy. *Agar Corp.*, 580 S.W.3d at 138, 142, 144, 148; *see also Nguyen*, 605 S.W.3d at 793.

Aiding and abetting, like civil conspiracy, is also a derivative tort—to the extent it is an actionable tort in Texas—and the trial court's proper grant of summary judgment on the underlying tort serves to grant summary judgment on the plaintiff's aiding and abetting claim as well. *See W. Fork Advisors*, 437 S.W.3d at 921; *see also Nguyen*, 605 S.W.3d at 792–93.

Appellants acknowledge in their briefing that their claims for civil conspiracy and aiding and abetting are derivative of their civil barratry claims, and they only assert that the trial court erred in granting appellees summary judgment on their civil conspiracy and aiding and abetting claims because the trial court first erred in granting appellees summary judgment on appellants' civil barratry claims. Because we have held that the trial court properly granted appellees summary judgment on appellants' civil barratry claims, we hold that the trial court did not err in granting

appellees summary judgment on appellants' derivative civil conspiracy and aiding and abetting claims. *See Nguyen*, 605 S.W.3d at 793.

We overrule appellants' second issue.

### C.    Breach of Fiduciary Duty

In their third issue, appellants argue that the trial court erred in granting appellees summary judgment on their breach of fiduciary duty claims because a four-year statute of limitations applies to their breach of fiduciary duty claims, their breach of fiduciary duty claims did not fully accrue until July 31, 2018 when the trial court dismissed appellants' civil barratry claims, appellees failed to negate applying the discovery rule, and the trial court erred in not applying the *Hughes* and *McClung* tolling doctrines to appellants' breach of fiduciary duty claims. In their fourth issue, appellants argue that the trial court erred in granting appellees summary judgment on their breach of fiduciary duty claims because such claims do not require actual damages to obtain the equitable remedy of fee forfeiture and appellees failed to negate the availability of statutory civil penalties.

Here, the trial court granted appellees summary judgment on appellants' breach of fiduciary duty claims without specifying the grounds. *See Beverick*, 186 S.W.3d at 148 (if trial court grants summary judgment without specifying grounds, we must uphold judgment if any of asserted grounds are meritorious). Thus, appellants must show that none of the proposed summary-judgment grounds support

75

the trial court's ruling. *Rogers*, 772 S.W.2d at 79; *see also Joe*, 145 S.W.3d at 157 (appellate court will affirm summary-judgment ruling if any of theories presented to trial court and preserved for appellate review are meritorious).

In their motion for partial summary judgment on appellants' breach of fiduciary duty claims, appellees asserted that appellants had essentially recast their time-barred civil barratry claims as breach of fiduciary claims "to prevent all of the barratry-related claims from being dismissed at [one time]."[37] Appellees reiterated this argument at the hearing on their partial-summary-judgment motion.

At the time that appellees filed their initial motion for partial summary judgment on appellants' civil barratry, civil conspiracy, and aiding and abetting claims, appellants' live pleading was their first amended petition. In their first amended petition, appellants only brought claims against appellees for civil barratry,

---

[37] To the extent that appellants assert in their briefing that appellees did not raise this ground in their partial-summary-judgment motion on appellants' breach of fiduciary duty claims, we disagree. *See* TEX. R. CIV. P. 166a(c); *Travis v. City of Mesquite*, 830 S.W.2d 94, 99–100 (Tex. 1992) ("In an appeal from a summary judgment, issues to be reviewed by the appellate court must have been actually presented to and considered by the trial court."); *see also Crimson Expl., Inc. v. Intermarket Mgmt., LLC*, 341 S.W.3d 432, 440 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("An appellate court should consider all the grounds for summary judgment . . . that were preserved by the movant . . . ."). Appellants acknowledge in their opening brief that appellees "moved for summary judgment on [a]ppellants' breach of fiduciary duty claims, alleging they '[were] just a recast of the time-barred barratry claims.'"

civil conspiracy, and aiding and abetting.[38] They did not allege any breach of fiduciary duty claims against appellees. After appellees filed their initial partial-summary-judgment motion,[39] asserting that appellants' civil barratry, civil conspiracy, and aiding and abetting claims were time barred, appellants again amended their petition, alleging, for the first time, claims for breach of fiduciary duty. Subsequently, the trial court granted appellees summary judgment on appellants' civil barratry, civil conspiracy, and aiding and abetting claims and dismissed those claims. Appellees then moved for partial summary judgment on appellants' newly alleged breach of fiduciary duty claims.

Texas courts have held that a plaintiff may not recast his claim in the language of another cause of action to avoid limitations or compliance with mandatory statutes or to circumvent existing case law contrary to the plaintiff's position. *See Earle v. Ratliff*, 998 S.W.2d 882, 893 (Tex. 1999); *Walker v. Con Cap Equities, Inc.*, No. 08-00-00244-CV, 2002 WL 971797, at *5 (Tex. App.—El Paso May 9, 2002, no pet.) (not designated for publication); *Crowder v. Am. Airlines, Inc.*, No. 05-99-00661-CV, 2000 WL 471520, at *2 (Tex. App.—Dallas Apr. 25, 2000, pet. denied) (not designated for publication); *Wright v. Fowler*, 991 S.W.2d 343, 352

---

[38] Appellants also alleged alternative negligence claims against appellees, which they later non-suited. *See supra*.

[39] This motion was for partial summary judgment because appellants' alternative negligence claims were still pending, as were the six appellants' claims for civil barratry, civil conspiracy, and aiding and abetting.

(Tex. App.—Fort Worth 1999, no pet.) (plaintiff cannot recast health care liability claim in language of another cause of action to avoid statute of limitations); *In re Kimball Hill Homes Tex., Inc.*, 969 S.W.2d 522, 526 (Tex. App.—Houston [14th Dist.] 1998, orig. proceeding) (underlying nature of claim controls and plaintiff cannot, by artful pleading, recast claim to avoid adverse effect of statute).

Here, it is apparent from a review of appellants' petitions that appellants have indeed attempted to reframe their time-barred civil barratry claims as breach of fiduciary duty claims. As to their civil barratry claims, appellants alleged that appellees engaged in improper solicitation of potential clients by violating several provisions of Texas Penal Code section 38.12, which prohibits barratry,[40] and rule 7.03 of the Texas Disciplinary Rules of Professional Conduct[41] concerning barratry, and appellees' procured contracts for legal services or employment as a result.[42] Appellants' breach of fiduciary duty claims are similarly based on appellees' alleged improper solicitation. In fact, their breach of fiduciary duty claims focus entirely on appellees' alleged failure to disclose that they had secured a contract for legal services based on improper solicitation. *See Crowder*, 2000 WL 471520, at *2 (focusing on "[t]he gist" of plaintiff's complaint). Appellants cannot avoid the fact

---

[40]     *See* TEX. PENAL CODE ANN. § 38.12(a)(4), (b).

[41]     *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 7.03(a)–(d).

[42]     *See* Act of May 5, 2011, 82d Leg., R.S., ch. 94, § 2, sec. 82.0651(a), 2011 Tex. Gen. Laws 534, 535 (amended 2013).

that their civil barratry claims are barred by the statute of limitations by trying to convert them to breach of fiduciary duty claims. *See In re Kimball Hill Homes Tex., Inc.*, 969 S.W.2d at 526; *see also Rodriguez v. Safeco Ins. Co. of Ind.*, No. SA-18-CV-00851-OLG, 2019 WL 650437, at \*4–5 (W.D. Tex. Jan. 7, 2019) (order) (plaintiff could not attempt to reframe time-barred claims to avoid applicable statute of limitations; noting plaintiff's fraud claim stemmed directly from allegations of breach of contract); *Martz*, 965 S.W.2d at 588–89 (essence of claim controls, not what pleader might choose to call it); *Herter v. Wolfe*, 961 S.W.2d 1, 5 (Tex. App.— Houston [1st Dist.] 1995, writ denied).

In sum, appellants have attempted to reframe their civil barratry claims as breach of fiduciary duty claims. Yet we have determined that appellees conclusively proved that appellants' civil barratry claims brought under the original version of Texas Government Code section 82.0651(a) are time barred. Because we held that the trial court did not err granting appellees summary judgment on appellants' civil barratry claims based on the statute of limitations, we also hold that the trial court did not err in granting appellees summary judgment on appellants' breach of fiduciary duty claims. *See, e.g.*, *Walker*, 2002 WL 971797, at \*5.

We overrule appellants' third and fourth issues.[43]

---

[43] Due to our holding, we need not address appellants' remaining arguments related to their assertion that the trial court erred in granting appellees summary judgment on appellants' breach of fiduciary duty claims. *See* TEX. R. APP. P. 47.1.

79

## Fourth Amended Petition

In their fifth issue, appellants argue that the trial court erred in denying them leave to file the fourth amended petition and in striking the fourth amended petition because the amendment was not prejudicial and surprise was not shown.

We review a trial court's denial of a motion for leave to file an amended pleading for an abuse of discretion. *See Mullins v. Martinez R.O.W., LLC*, 498 S.W.3d 700, 705 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *Tex-Air Helicopters, Inc. v. Galveston Cty. Appraisal Review Bd.*, 76 S.W.3d 575, 581 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). We also review a trial court's decision to strike an amended pleading for an abuse of discretion. *See Cherry v. McCall*, 138 S.W.3d 35, 42–43 (Tex. App.—San Antonio 2004, pet. denied). A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without any reference to guiding rules or principles. *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012); *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003).

In their first amended petition, appellants brought claims against appellees for civil barratry, civil conspiracy, and aiding and abetting. On July 31, 2018, the trial court granted appellees partial summary judgment on appellants' civil barratry, civil conspiracy, and aiding and abetting claims and dismissed those claims against appellees. In their third amended petition, appellants brought claims against appellees for breach of fiduciary duty. On January 2, 2019, the trial court granted

appellees partial summary judgment on appellants' breach of fiduciary duty claims and dismissed those claims against appellees. The trial court's docket control order provided that "[a]ll amendments and supplements" to the parties' pleadings were required to be filed by February 11, 2019. Yet, on March 15, 2019, appellants filed a motion for leave to file their fourth amended petition, along with their fourth amended petition. In their fourth amended petition, appellants sought to "reassert[]" their civil barratry, civil conspiracy, aiding and abetting, and breach of fiduciary duty claims against appellees. In response to appellants' filing of their motion for leave and their fourth amended petition, appellees objected and requested that the trial court deny appellants' motion for leave and strike appellants' fourth amended petition.

Texas Rule of Civil Procedure 63 requires a party to obtain leave of court in order to file any pleading "within seven days of the date of trial or thereafter." TEX. R. CIV. P. 63. A summary-judgment hearing, including a hearing on a partial-summary-judgment motion, is a trial under rule 63. *Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex. 1988); *Dickens v. Jason C. Webster, P.C.*, No. 05-17-00423-CV, 2018 WL 6839568, at *13–14 (Tex. App.—Dallas Dec. 31, 2018, no pet.) (mem. op.) (hearing on motion for partial summary judgment constitutes "a trial within the meaning of rule 63"); *Valiant Petroleum, Inc. v. FMC Techs., Inc.*, Nos. 13-11-00673-CV, 13-11-00674-CV, 13-12-00020-CV, 2013WL

81

3377628, at \*4 (Tex. App.—Corpus Christi–Edinburg July 3, 2013, no pet.) (mem. op.). And Texas Rule of Civil Procedure 166a(c) provides that a summary judgment shall be rendered on the "pleadings . . . on file at the time of the hearing, or filed thereafter and before judgment with permission of the court." TEX. R. CIV. P. 166a(c). To file an amended pleading after a summary-judgment hearing, a party must secure the trial court's permission. *See* TEX. R. CIV. P. 166a(c); *Prater v. State Farm Lloyds*, 217 S.W.3d 739, 741 (Tex. App.—Dallas 2007, no pet.). A trial court cannot grant a motion to amend the pleadings once it renders summary judgment. *Cotton v. Briley*, 517 S.W.3d 177, 185–86 (Tex. App.—Texarkana 2017, no pet.); *Kilpatrick v. Vasquez*, No. 01-08-00945-CV, 2009 WL 417918, at \*1 n.2 (Tex. App.—Houston [1st Dist.] Feb. 19, 2009, no pet.) (mem. op.) ("[O]nce summary judgment has been rendered, a pleading may not be amended, even with leave of court."); *see also Automaker, Inc. v. C.C.R.T. Co., Ltd.*, 976 S.W.2d 744, 745–46 (Tex. App.—Houston [1st Dist.] 1998, no pet.).

Before appellants filed their motion for leave to file their fourth amended petition and their fourth amended petition, the trial court had already granted appellees summary judgment on appellants' civil barratry, civil conspiracy, aiding and abetting, and breach of fiduciary duty claims. These are the same claims that appellants sought to "reassert[]" in their fourth amended petition. *See Cotton*, 517

82

S.W.3d at 185–86 (trial court cannot grant motion to amend pleadings once it renders summary judgment); *Kilpatrick*, 2009 WL 417918, at *1 n.2.

Appellants assert that the general rule that a trial court cannot grant a motion to amend the pleadings once it renders summary judgment does not apply here because appellants' alternative negligence claims remained pending when they filed their fourth amended petition, making the trial court's orders granting summary judgment and dismissing appellants' civil barratry, civil conspiracy, aiding and abetting, and breach of fiduciary duty claims interlocutory.[44] But whether a summary judgment order is final or interlocutory "is of no consequence" and does not alter the general rule. *In re Haines*, No. 04-18-00654-CV, 2018 WL 6182826, at *2 (Tex. App.—San Antonio Nov. 28, 2018, orig. proceeding [mand. denied]) (mem. op.); *see also Cotton*, 517 S.W.3d at 185–86 (in case involving interlocutory-summary-judgment order, stating trial court cannot grant motion to amend pleadings once it renders summary judgment); *Kilpatrick*, 2009 WL 417918, at *1 & n.2 (in case involving partial summary judgment, noting "once summary judgment has been rendered, a pleading may not be amended, even with leave of court"); *Cherry*, 138 S.W.3d at 42–43 (holding trial court did not err in striking plaintiffs' causes of action raised in amended pleading filed after trial court entered

---

[44] Appellants attempt to distinguish this case from our previous decision in *Automaker, Inc. v. C.C.R.T. Co., Ltd.* on this basis. 976 S.W.2d 744 (Tex. App.—Houston [1st Dist.] 1998, no pet.).

83

partial-summary-judgment order in favor of defendants); *Martin v. First Republic Bank, Fort Worth, N.S.*, 799 S.W.2d 482, 487–89 (Tex. App.—Fort Worth 1990, writ denied) (holding trial court did not err in denying motion to amend pleading and striking amended pleading filed after trial court entered interlocutory-summary-judgment order and explaining "[t]he matter had been resolved," "[t]he issues determined on a motion for summary judgment are final, although the judgment is interlocutory," and "[a]fter an interlocutory summary judgment is granted, the issues it decides cannot be litigated further unless the trial court sets the judgment aside or the summary judgment is reversed on appeal").

In their fourth amended petition, appellants sought to "reassert[]" claims that the trial court had already granted appellees summary judgment on and had dismissed. Appellants' motion for leave and their fourth amended petition were filed 218 days after the trial court granted appellees summary judgment and dismissed appellants' civil barratry, civil conspiracy, and aiding and abetting claims and sixty-two days after the trial court granted appellees summary judgment and dismissed appellants' breach of fiduciary duty claims. *See Martin*, 799 S.W.2d at 487–89 (noting, in case involving attempted pleading amendment after trial court entered interlocutory-summary-judgment order, "[t]he matter had been resolved," "[t]he issues determined on a motion for summary judgment are final, although the judgment is interlocutory," "[a]fter an interlocutory summary judgment is granted,

84

the issues it decides cannot be litigated further unless the trial court sets the judgment aside or the summary judgment is reversed on appeal"). Thus, we hold that the trial court did not err in denying appellants' motion for leave to file their fourth amended petition and in striking their fourth amended petition. *See In re Haines*, 2018 WL 6182826, at \*2; *see also Cotton*, 517 S.W.3d at 185–86; *Kilpatrick*, 2009 WL 417918, at \*1 n.2.

We overrule appellants' fifth issue.

### Motion to Reconsider

In their sixth issue, the fourteen appellants[45] argue that the trial court erred in denying their motion to reconsider and vacate the July 31, 2018 and January 2, 2019 partial-summary-judgment orders, which dismissed their civil conspiracy, aiding and abetting, and breach of fiduciary duty claims against appellees, because a four-year statute of limitations applied to the fourteen appellants' civil barratry and breach of fiduciary duty claims, the trial court erred in determining when the fourteen appellants' civil barratry and breach of fiduciary duty claims accrued, and the fourteen appellants had asserted "new" civil barratry and breach of fiduciary duty claims in their fourth amended petition which were not addressed by the trial court's previous summary-judgment rulings.

---

[45] The fourteen appellants are Flynn, Cobb, King, Lee, Jolet, Pimentel, Quin, White, Winston, Scott, Torries, Chambliss, Smith, and Woods.

Once a trial court grants a summary judgment motion, it generally has no obligation to consider further motions on the issues adjudicated by the summary judgment. *Bridgestone Lakes Cmty. Improvement Ass'n v. Bridgestone Lake Dev., Co.*, 489 S.W.3d 118, 125 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *Macy v. Waste Mgmt., Inc.*, 294 S.W.3d 638, 651 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). We review a trial court's decision to grant or deny a motion to reconsider a summary-judgment ruling for an abuse of discretion. *Macy*, 294 S.W.3d at 651; *AIC Mgmt. v. Baker*, No. 01-02-01074-CV, 2003 WL 22724629, at *7 (Tex. App.—Houston [1st Dist.] Nov. 20, 2003, pet. denied) (mem. op.). A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without any reference to guiding rules or principles. *Ford Motor Co.*, 363 S.W.3d at 578; *Walker*, 111 S.W.3d at 62. A trial court does not abuse its discretion when it denies a motion to reconsider a prior summary-judgment ruling because the movant repeats the same argument it made in opposition to the original summary-judgment motion. *See Brashear v. Dorai*, No. 14-19-00194-CV, 2020 WL 5792304, at *4–5 (Tex. App.—Houston [14th Dist.] Sept. 29, 2020, no pet.) (mem. op.); *see also Bridgestone*, 489 S.W.3d at 125.

The fourteen appellants moved for the trial court to reconsider and vacate its July 31, 2018 and January 2, 2019 partial-summary-judgment orders which dismissed, among others, their civil barratry and breach of fiduciary duty claims

against appellees. In their motion, the fourteen appellants asserted that their civil barratry claims were not time barred because a four-year statute of limitations applied and their civil barratry claims did not accrue when the improper solicitation was made. As to their breach of fiduciary duty claims, the fourteen appellants relied on their fourth amended petition to assert that they had alleged a "new" breach of fiduciary duty claim based on appellees wrongfully withholding of the fourteen appellants' settlement funds which appellees had received in 2018.

To support their request for reconsideration, the fourteen appellants either repeated or mirrored the arguments they made when they originally opposed appellees' partial-summary-judgment motions on their civil barratry and breach of fiduciary duty claims or they relied on purported "new" claims that they had attempted to allege in their untimely filed fourth amended petition. *See Brashear*, 2020 WL 5792304, at \*4–5. The trial court did not grant appellants' motion for leave to file their fourth amended petition and struck appellants' fourth amended petition, and we have held that the trial court did not err in doing so. Under these circumstances, we cannot say that the trial court erred when it denied the fourteen appellants' motion to reconsider and vacate the trial court's July 31, 2018 and January 2, 2019 partial-summary-judgment orders. *See Mendez v. San Benito/Cameron Cty. Drainage Dist. No. 3*, 45 S.W.3d 746, 754–55 (Tex. App.— Corpus Christi–Edinburg 2001, pet. denied) ("[A] trial court's action when it

considers a party's motion to reconsider the court's prior ruling on a motion for summary judgment is within the court's discretion.").

We overrule the fourteen appellants' sixth issue.

## Conclusion

Having denied the six appellants' motion for leave to amend the April 30, 2019 notice of appeal and dismissed as moot the motion to strike the six appellants' amended notice of appeal, we dismiss the appeal of the six appellants[46] for lack of jurisdiction. We affirm the judgment of the trial court as to the remaining 266 appellants.

Julie Countiss
Justice

Panel consists of Justices Hightower, Countiss, and Farris.

---

[46] The six appellants are Clemons, Do, January, Marks, Ramirey, and Riggs.